# 23-350

## United States Court of Appeals
## for the Second Circuit



ROBERT GUTHRIE,

*Plaintiff-Appellant,*

-against-

RAINBOW FENCING INC, AND  LAWSON BURGE,

*Defendants-Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000
*legal@abdulhassan.com*

DICK BAILEY  SERVICE, Inc.  ·  1-800-531-2028  ·  dickbailey.com
[REPRODUCED ON RECYCLED PAPER]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.      JURISDICTION ...........................................................................1

II.     ISSUES PRESENTED ..................................................................3

III.    STATEMENT OF FACTS/STATEMENT OF CASE ..................................5

IV.     SUMMARY OF ARGUMENT..................................................10

V.      ARGUMENTS ...........................................................................13

    1. ALTHOUGH ACTUAL AND CONCRETE INJURY EXISTS, THE
       DISTRICT COURT HAD SUBJECT MATTER JURISDICTION OVER
       THE NYLL WAGE STATEMENT AND WAGE NOTICE CLAIMS
       PURSUANT TO THE SUPPLEMENTAL JURISDICTION STATUTE
       AT 28 USC § 1367 ...................................................................13

        (A)   THE REQUIREMENTS FOR SUPPLEMENTAL JURISDICTION
              ARE SATISFIED AND NO EXCEPTIONS APPLY .......................13

        (B)   THE SECOND CIRCUIT HAS EXERCISED SUBJECT
              MATTER JURISDICTION OVER THE VERY TYPE OF NYLL
              WAGE NOTICE AND WAGE STATEMENT CLAIMS AS IN
              THIS CASE ......................................................................22

        (C)   THE OVERWHELMING MAJORITY OF NEW YORK'S
              FEDERAL JUDGES CONTINUE TO EXERCISE SUBJECT
              MATTER JURISDICTION OVER NYLL WAGE NOTICE AND
              WAGE STATEMENT CLAIMS, BUT THE SPLIT CREATED BY
              A SMALL MINORITY HAS RESULTED IN MUCH
              UNCERTAINTY AND CHAOS .......................................................23

(D)　THE DISTRICT COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION OVER THE STATE OVERTIME AND MINIMUM WAGE CLAIMS, FURTHER CONFIRMS THAT IT WAS REQUIRED TO ALSO EXERCISE SUBJECT MATTER JURISDICTION OVER THE STATE WAGE NOTICE AND WAGE STATEMENT CLAIMS ....................................................24

(E)　THE CASES RELIED UPON BY THE DISTRICT COURT ARE DISTINGUISHABLE AND NOT INCOSISTENT WITH PLAINTIFF'S POSITION – THEY DO NOT INVOLVE OR ADDRESS SUPPLEMENT JURISDICTION, ESPECIALLY IN THE CONTEXT OF THIS CASE ..............................................................26

2. IN ANY EVENT, CONCRETE AND SUFFICIENT INJURY/HARM EXISTS FOR STANDING PURPOSES ........................................................30

(A)　FINANCIAL HARM – UNPAID WAGES ........................................34

(B)　FINANCIAL HARM - LOSS OF MONETARY EMPLOYMENT BENEFIT ........................................................................................35

(C)　INFORMATIONAL HARM AND OTHER FORMS OF CONCRETE INJURY ............................................................................................37

3. THE DISTRICT COURT RAISED THE ISSUE OF SUBJECT MATTER JURISDICTION SUA SPONTE WITHOUT PROVIDING NOTICE AND AN OPPORTUNITY TO BE HEARD ........................................................40

VI.　CONCLUSION ............................................................................................46

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (C) ............47

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Alonso Vazquez v. Azoulay*,
   834 F. App'x 653, 654 (2d Cir. 2021) ................................................................22

*Artis v. D.C.*,
   199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018) .......................3, 10, 14, 19, 29

*Brooklyn Savings Bank v. O'Neil,*
   324 U.S. 697 (1945) ................................................................................39

*Brummell v. K1 HVAC Inc.,*
   No. 19 CV 5488(FB)(RML), 2021 WL 3888138, at 6 (E.D.N.Y. Aug. 13, 2021)
   ................................................................................8, 23, 41

*Bueno v. Buzinover,*
   2023 WL 2387113, at 3 (S.D.N.Y. Mar. 7, 2023)....................................4, 31, 42

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47, 54–55 (2d Cir. 2016) ....................................................14

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77, 82 (2d Cir. 2018) ................................................2, 40, 41

*Citizens for Resp. & Ethics in Washington v. Trump*,
   971 F.3d 102 (2d Cir. 2020) ................................................................28

*City of Chicago v. Int'l Coll. of Surgeons*,
   522 U.S. 156, 164–65 (1997) ............................................................17

*Cortez v. 8612 Best Coffee Shop Inc.,*
   No. 13CV3095RRMRML, 2015 WL 10709830, at 8 (E.D.N.Y. Aug. 14, 2015)
   ................................................................................23, 24

*Deng v. Frequency Elecs., Inc.*,
   2022 WL 16923999, at 3 (E.D.N.Y. Nov. 14, 2022) ..........................................24

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546, 559 (2005) .....................................................................................18

*Green v. Dep't of Educ.*,
   16 F.4th 1070, 1074 (2d Cir. 2 021) ......................................................................2

*Hernandez v. Quality Blacktop Servs., Inc.*,
   No. 18CV4862RJDRML, 2021 WL 1207316, at 9 (E.D.N.Y. Mar. 30, 2021)...24

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
   54 F.4th 95, 100 (2d Cir. 2022), cert. denied, No. 22-662, 2023 WL 2634542
   (U.S. Mar. 27, 2023) ...........................................................................................2

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
   19 F.4th 58, 60 (2d Cir. 2021) .......................................................................27, 28

*Marquez v. Indian Taj, Inc.*,
   No. 20 CV 5855 (DG)(RML), 2022 WL 4485948, at 6 (E.D.N.Y. Aug. 5, 2022)
   .....................................................................................................8, 23, 41

*Martinez v. 22-04 Collier Ave LLC*,
   EDNY Case No. 22-cv-570(RER) .......................................................................37

*Melito v. Experian Mktg. Sols., Inc.*,
   923 F.3d 85 (2d Cir. 2019)..................................................................................28

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502, 510 (2d Cir. 2020) .......................................................................21

*Sebelius v. Auburn Reg'l Med. Ctr.*,
   568 U.S. 145, 153 (2013) ...................................................................................43

*Sevilla v. House of Salads One LLC*,
   No. 20-CV-6072 (PKC), 2022 WL 954740, (E.D.N.Y. Mar. 30, 2022).............24

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234, 245 (2d Cir. 2011) .................................................3, 10, 14, 18, 21

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   581 U.S. 433, 439 (2017) .............................................................................28, 29

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)....................................................................*passim*

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715, 725 (1966) .............................................................15, 17

**Statutes**

28 U.S.C. § 1291 .................................................................................2

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1337 .................................................................................1

28 U.S.C § 1367(a) ....................................................................*passim*

29 U.S.C. § 207.................................................................................20

29 U.S.C. § 216(b) ........................................................................1, 21

NYLL § 198 ...............................................................................*passim*

NYLL § 195 ...............................................................................*passim*

12 NYCRR § 142-2.6....................................................................5, 33

# I.    JURISDICTION

Plaintiff-Appellant Robert Guthrie ("Plaintiff," "Appellant" or "Guthrie") filed this action in the United States District Court – Eastern District of New York, on October 25, 2021, against Defendants-Appellees Rainbow Fencing Inc and Lawson Burge (collectively "Defendants," or "Appellees"). (A5-A14). The district court had subject matter jurisdiction over Plaintiff's FLSA claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and pursuant to 28 U.S.C. §§ 1331, 1337. The district court had supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

Following its February 24, 2023 order (A95-A111), affirming the Report and Recommendation, the district court on February 27, 2023, entered final judgment (A112), dismissing Plaintiff's New York Labor Law ("NYLL") wage notice and wage statement claims for lack of subject matter jurisdiction and awarding Plaintiff money on his other state and federal claims.

Plaintiff timely filed his notice of appeal (A113-A114)[1] on March 11, 2023 from the final judgment and order of the district court – appealing only the dismissal of the NYLL wage notice and wage statement claims for lack of subject matter jurisdiction. This Court has appellate jurisdiction pursuant to 28 U.S.C. §

---

[1] "A" in this and other citations used in this brief refers to the joint appendix. For example, "A39" refers to page 39 of the joint appendix.

1291. See *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) (this Court reversed the district court where "The District Court accordingly dismissed plaintiffs' NYLL claims, leaving them to be refiled in state court."). *Jusino v. Fed'n of Cath. Tchrs., Inc.,* 54 F.4th 95, 100 (2d Cir. 2022), cert. denied, No. 22-662, 2023 WL 2634542 (U.S. Mar. 27, 2023)("We review de novo a district court's dismissal for lack of subject-matter jurisdiction, construing the complaint liberally and accepting all factual allegations in the complaint as true. *Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2 021)").

## II.    ISSUES PRESENTED

**ISSUE 1**: Whether the district court committed reversible error in dismissing on grounds of lack of standing/subject matter jurisdiction, Plaintiff's state claims for wage notice and wage statement violations, where it is undisputed that the requirements of the supplemental jurisdiction statute at 28 U.S.C. § 1367 are satisfied – that the dismissed claims were inextricably intertwined with the federal claims and with which they form a common nucleus of operative facts, and where it is undisputed that none of enumerated exceptions in 28 U.S.C. § 1367 applied.

**Answer:** Yes.   Based on consistent and settled U.S. Supreme Court jurisprudence, the Second Circuit has made it clear that 'Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."' *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). See also, *Artis v. D.C.*, 199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018)('The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." § 1367(a). Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode.').

3

**Standard of Review ("SOR"): De novo**.

**ISSUE 2**: Whether Plaintiff suffered a sufficient injury within the meaning of Article III as to his wage notice and wage statement claims, aside from and independent of the federal overtime claims.

**Answer:** Yes. If the Court rules in Plaintiff's favor as to the first issue above, it need not address the question of injury under Article III as to the wage notice and wage statement claims. Other district judges have held that Article III injuries exist as to these very claims. See i.e. *Bueno v. Buzinover,* 2023 WL 2387113, at 3 (S.D.N.Y. Mar. 7, 2023) ("The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims. Consistent with this, multiple courts in this District have exercised jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice.").

**Standard of Review ("SOR"): De novo**.

4

  
## III.   STATEMENT OF FACTS/STATEMENT OF CASE

On October 25, 2021, Plaintiff Robert Guthrie ("Plaintiff" or "Guthrie"),
filed this case in the district court asserting overtime wage claims under the federal
Fair Labor Standard Act ("FLSA"), overtime and minimum wage claims under
NYLL, and wage statement and wage notice claims under NYLL. (A5-A14). For
many years, New York Labor Law contained wage notice and wage statement
requirements in statute (i.e., NYLL § 195) and recordkeeping of similar type
information by regulation (i.e., 12 NYCRR § 142-2.6). Through a series of
amendments to NYLL from 2009 to 2011, the NY Legislature strengthened these
requirements. NYLL § 195(1)(a) states in relevant part as follows:

> Every employer shall:
>
> 1.  (a) provide his or her employees, in writing in English and in the
> language identified by each employee as the primary language of
> such employee, at the time of hiring, a notice containing the
> following information: the rate or rates of pay and basis thereof,
> whether paid by the hour, shift, day, week, salary, piece,
> commission, or other; allowances, if any, claimed as part of the
> minimum wage, including tip, meal, or lodging allowances; the
> benefit portion of the minimum rate of home care aide total
> compensation as defined in section thirty-six hundred fourteen-c of
> the public health law ("home care aide benefits"), if applicable;
> prevailing wage supplements, if any, claimed as part of any
> prevailing wage or similar requirement pursuant to article eight of
> this chapter; the regular pay day designated by the employer in
> accordance with section one hundred ninety-one of this article; the
> name of the employer; any "doing business as" names used by the
> employer; the physical address of the employer's main office or
> principal place of business, and a mailing address if different; the

5

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(3) states in relevant part as follows:

Every employer shall:

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the benefit portion of the minimum rate of home care aide total compensation as defined in section thirty-six hundred fourteen-c of the public health law ("home care aide benefits"), if applicable; prevailing wage supplements, if any, claimed as part of any prevailing wage or similar requirement pursuant to article eight of this chapter; and net wages. Where such prevailing wage supplements are claimed, or such home care aide benefits are provided, the statement shall either: (i) identify the type of each supplement claimed, or the type of each home care aide benefits provided, and the hourly rate for each; or (ii) be accompanied by a copy of the applicable notice required under subdivisions one and two of this section. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed;

The amendments also allowed employees, through NYLL 198(1-b) and (1-d), to bring the very claims at issue on this appeal because of the serious, actual and concrete harm caused by widespread violation of these important wage notice

6

and wage statement requirements. Because the actual and concrete harms can be difficult to quantify and measure, the wage notice and wage statement claims allow recovery of a daily penalty that is capped at $5,000 for the wage notice claim and capped at another $5,000 for the wage statement claim. See NYLL § 198(1-b) and (1-d). Liability under the wage notice and wage statement claims are also tied to obvious financial harm/injury of unpaid wages such as unpaid wages under the FLSA and NYLL, in that as set forth in the statute at NYLL § 198(1-b) and (1-d), the wage notice and wage statement claims will fail if the employer paid all wages as required by the FLSA and NYLL - wages that Plaintiff was already awarded a judgment for in this case by the district court.

After Defendants defaulted, Plaintiff moved for a default judgment on April 21, 2022. (A18-A61). On December 13, 2022, the Hon. Magistrate-Judge Robert Levy issued a Report & Recommendation ("R&R")(A62-A76), and found in relevant part that the district court had subject matter jurisdiction over the federal overtime claims and the state overtime and minimum wage claims, but that the district court did not have subject matter jurisdiction over the NYLL wage notice and wage statement claims because in his view Plaintiff did not suffer an Article III injury, even though the violations were clear and also admitted by default, and the district court could otherwise award judgment to Plaintiff on these claims – as Magistrate-Judge Levy himself had done in previously in exercising subject matter

jurisdiction over these very type of claims. See i.e., *Brummell v. K1 HVAC Inc.,* No. 19 CV 5488(FB)(RML), 2021 WL 3888138, at 6 (E.D.N.Y. Aug. 13, 2021), report and recommendation adopted, No. 1:19-CV-5488-FB-RML, 2021 WL 3884194 (E.D.N.Y. Aug. 31, 2021); *Marquez v. Indian Taj, Inc.,* No. 20 CV 5855 (DG)(RML), 2022 WL 4485948, at 6 (E.D.N.Y. Aug. 5, 2022), report and recommendation adopted, No. 20CV05855DGRML, 2022 WL 4485185 (E.D.N.Y. Sept. 27, 2022).

As such, the R&R awarded Plaintiff a money judgment on his federal and state overtime claims and his state minimum wage claims, but dismissed the state wage notice and wage statement claims for lack of Article III injury/standing/subject matter jurisdiction.

The subject matter jurisdiction issue was raised by the Magistrate-Judge sua sponte without giving Plaintiff notice and an opportunity to be heard prior to the issuance of the R&R. The R&R did not specifically address the supplemental jurisdiction statute even though the complaint sets forth that the "Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC 1367" (A6 ¶ 4), and where it has been settled and never disputed that this is the basis for jurisdiction over the state claims.

On December 27, 2022, Plaintiff filed objections to that part of the R&R that recommended dismissal of the NYLL wage statement and wage notice claims on

grounds of lack of Article III injury/standing/subject matter jurisdiction. (A77-A92). As set forth in the complaint, Plaintiff explained that the primary basis of the wage notice and wage statement claims is the supplemental jurisdiction statute where, as here, it is undisputed that the state wage notice and wage statement claims share a common nucleus of operative facts with the federal overtime claims. Plaintiff also explained that concrete injury under Article III also exists independently as to the state wage notice and wage statement claims.

On February 24, 2023, the district judge overruled the objections to the R&R. In doing so, the district judge did not focus much on the supplemental jurisdiction argument and seem to hold that Plaintiff needed to show the requirements of original subject matter jurisdiction under Article III for the wage notice and wage statement claims independent of the related federal overtime claims.

Following its February 24, 2023 order (A95-A111), affirming the Report and Recommendation, the district court on February 27, 2023, entered final judgment (A112), dismissing Plaintiff's NYLL wage notice and wage statement claims for lack of subject matter jurisdiction and awarding Plaintiff money on his other state and federal claims.

On March 11, 2023, Plaintiff timely filed a notice of appeal. (A113-A114). This brief now constitutes the perfection of the appeal.

## IV. SUMMARY OF ARGUMENT

Based on consistent and settled U.S. Supreme Court jurisprudence, the Second Circuit has made it clear that 'Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."' *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). See also, *Artis v. D.C.*, 199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018)('The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." § 1367(a). Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode.').

In clear contravention of this mandate, the district court found lack of subject matter jurisdiction even though the district court did not and could not dispute that "section 1367(a) is satisfied" and where the conclusion of lack of subject matter jurisdiction was not "founded upon an enumerated category of subsection 1367(c)" – it was based on the Court's view that there was an absence of Article III injury as to the subject NYLL wage notice and wage statement claims when these claims were analyzed independent and separate from the federal overtime claims.

Article III injury as to state claims is not set forth in 28 USC § 1367 as a requirement for exercise of supplemental subject matter jurisdiction because Article III injury under the Constitution must be an injury "arising under this Constitution, the Laws of the United States, and Treaties made" and by definition, injury under state law as to state law claims does not arise under federal law. Viewed in another way, a requirement under Article III subject matter jurisdiction, is the existence of a federal question, where, as here, and in most cases, the other grounds for Article III jurisdiction do not apply (diversity of citizenship, etc.), and by definition, state law claims do not present a federal question, else they will qualify as federal claims. As such, if the district court is correct, it would not have been able to exercise subject matter jurisdiction over the state overtime and minimum wage claims as it did, and federal district courts would not be able to exercise jurisdiction over most state claims over which they currently exercise jurisdiction because most such state claims depend on the supplemental jurisdiction statute and related jurisprudence and do not implicate the other grounds for Article III subject matter jurisdiction such as diversity of citizenship, federal parties, dispute between states etc.

Even though the bases of subject matter jurisdiction over the state claims is the federal supplemental jurisdiction statute at 28 USC § 1367, as alleged in the complaint (A6, ¶ 4), the R&R did not address or directly address the supplemental

11

jurisdictional statute. Similarly, the district judge only briefly touched upon supplemental jurisdiction, and it appears that none of the cases cited by the district court judges dealt with or addressed supplemental jurisdiction.

Although Article III injury/case must arise under the federal law in the context of this case where other grounds for Article III jurisdiction do not exists (diversity of citizenship, etc), in the alternative, a concrete injury within the meaning of Article III otherwise exists for several reasons. First, the wage notice and wage statement claims are directly tied to unpaid wages which are an obvious form of financial injury – without unpaid wages under the FLSA and NYLL in this case, the wage notice and wage statement claims will fail as set forth in the statue at NYLL § 198(1-b) and (1-d). Second, providing an employee like Plaintiff with wage notice and wage statements and the necessary recordkeeping and accounting etc., that comes along, is a very valuable monetary employment benefit that Plaintiff would otherwise have to pay for in time and money, and depriving Plaintiff of this monetary benefit by not providing him with the required notice and statements is an obvious and concrete financial injury. Third, Plaintiff has also suffered concrete information harm as set forth in *TransUnion* itself, because he was not provided with information required by law by a fiduciary (employer_ entrusted with large amounts of Plaintiff's money and obligations, and the many downstream harms that can be reasonably inferred at this stage as further explained

below. Finally, as the district court itself recognized, other district court judges

have taken the opposite position and have held that the allegation of not getting the

required notice is enough to establish Article III standing/subject matter

jurisdiction.

Once again, however, the correct basis for subject matter jurisdiction over

all of the state claims is the supplemental jurisdiction statute which codified U.S.

Supreme Court jurisprudence on this issue.

## V.    ARGUMENTS

### 1.    ALTHOUGH ACTUAL AND CONCRETE INJURY EXISTS, THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION OVER THE NYLL WAGE STATEMENT AND WAGE NOTICE CLAIMS PURSUANT TO THE SUPPLEMENTAL JURISDICTION STATUTE AT 28 USC § 1367

#### (A) THE REQUIREMENTS FOR SUPPLEMENTAL JURISDICTION ARE SATISFIED AND NO EXCEPTIONS APPLY

The district court granted a default judgment as to the overtime claims under

the FLSA and NYLL, and as to the minimum wage claims under NYLL, but

dismissed the wage notice and wage statement claims under NYLL on the grounds

that Plaintiff did not suffer the type of injury required by Article III of the U.S.

Constitution, and as such, the Plaintiff did not have standing under Article III and

the Court lacked subject matter jurisdiction over these wage notice and wage

statement claims.  The district court should be reversed because it had subject

matter jurisdiction over the NYLL wage statement and wage notice claims under the federal supplemental jurisdiction statute at 28 USC § 1367 which codified U.S. Supreme Court's Constitutional jurisprudence on this issue.

Based on consistent and settled U.S. Supreme Court jurisprudence, the Second Circuit has made it clear that 'Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."' *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). See also, *Artis v. D.C.*, 199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018)('The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." § 1367(a). Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode.'). At the outset, standing is part of subject matter jurisdiction and a dismissal for lack of Article III injury/standing is a dismissal for lack of subject matter jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016). Article III, Section 2 of the U.S. Constitution states in relevant part as follows:

> **Section 2.** The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;-

-to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.[1]

In private party suits like this one, Article III subject matter jurisdiction usually comes in two forms – federal question jurisdiction and diversity of citizenship jurisdiction. Where a claim does not independently satisfy the requirements of Article III, it will be deemed to satisfy the requirements of Article III and part of the same case and controversy as another claim that independently satisfies the requirements of Article III, where the two claims are sufficiently related within the meaning of the supplemental jurisdiction statute at 28 USC § 1367, in that they are viewed as forming *one* and the *same* Constitutional case.

Whether state law claims such as the wage notice and wage statement claims here are part of the same Constitutional Article III case as the federal overtime claim turns on whether the state and federal claims share a common nucleus of operative facts or are inextricably intertwined – the standard for exercising supplemental jurisdiction under 28 U.S.C § 1367 – this standard can also be equated to the standard for applying the doctrine of res judicata. In this regard, the U.S. Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), explained in relevant part as follows:

15

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' U.S.Const., Art. III, s 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'[12] The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

In 1990, Congress codified the U.S. Supreme Court's supplemental jurisdiction jurisprudence by enacting the supplemental jurisdiction statute at 28 U.S.C § 1367(a), which states in relevant part as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Notably, the logic of federal supplemental subject matter jurisdiction is not that the Article III requirements are eliminated – except through Constitutional amendment, Congress by statute cannot override the Constitutional Article III requirements such as injury/federal question, diversity of citizenship, etc. Instead, the logic and basis for supplemental jurisdiction is that the claims over which supplemental jurisdiction is exercised "are so related to claims in the action within

such original jurisdiction that they form part of the **same** case or controversy under Article III of the United States Constitution." As such, the relevant inquiry is not whether the wage notice and wage statement claims, independent of the federal overtime claims, satisfy the requirements of Article III - such as injury/ federal question, etc. The relevant inquiry is whether the wage notice and wage statement claims "are so related to the [FLSA] claims" that they form part of the same case as the FLSA claims over which the court undisputedly has federal subject matter jurisdiction. If yes, then the Article III injury/subject matter jurisdiction over the FLSA overtime claims extends to the wage notice and wage statement claims under state law.

Following *Gibbs*, and the adoption of the supplemental jurisdiction statute in 1990, the U.S. Supreme Court in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997), explained in relevant part as follows:

> As for ICS' accompanying state law claims, this Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading. 28 U.S.C. § 1367.

17

In 2005, the U.S. Supreme Court in *Exxon Mobil Corp. v. Allapattah Servs.,*

*Inc.*, 545 U.S. 546, 559 (2005), stated in relevant part as follows:

> If the court has original jurisdiction over a single claim in the
> complaint, it has original jurisdiction over a "civil action" within the
> meaning of § 1367(a), even if the civil action over which it has
> jurisdiction comprises fewer claims than were included in the
> complaint.

In *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d

Cir. 2011), the Second Circuit explained the exercise of supplemental jurisdiction

as follows:

> A district court's exercise of supplemental jurisdiction is governed by
> 28 U.S.C. § 1367 ("section 1367")…
>
> For purposes of section 1367(a), claims "form part of the same case or
> controversy" if they "derive from a common nucleus of operative
> fact." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296,
> 308 (2d Cir.2004) (internal quotation marks omitted). Here, the NYLL
> and FLSA actions clearly derive from such a common nucleus of
> operative facts since they arise out of the same compensation policies
> and practices of Park Avenue. *See, e.g., Treglia v. Town of
> Manlius,* 313 F.3d 713, 723 (2d Cir.2002)
> (exercise of supplemental jurisdiction was proper where plaintiff's
> state and federal claims arose "out of approximately the same set of
> events").
>
> Where section 1367(a) is satisfied, "the discretion to
> decline supplemental jurisdiction is available *only if* founded upon an
> enumerated category of subsection 1367(c)." *Itar–Tass Russian News
> Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998)
> (emphasis supplied).

The Second Circuit's description above was reiterated and reaffirmed by the

U.S. Supreme as recently as 2018 in *Artis v. D.C.,* 199 L. Ed. 2d 473, 138 S. Ct.

594, 597–98 (2018):

> The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables
> federal district courts to entertain claims not otherwise within their
> adjudicatory authority when those claims "are so related to claims ...
> within [federal-court competence] that they form part of the same case
> or controversy." § 1367(a). Included within
> this supplemental jurisdiction are state claims brought along with
> federal claims arising from the same episode.

Notably, the district court did not dispute that the subject NYLL wage notice

and wage statement claims share a common nucleus of operative facts with the

federal FLSA overtime claims – the district court's ruling was based on the injury

issue.

Nonetheless, borrowing from the Second Circuit above, "Here, the NYLL

[wage notice and wage statement] and FLSA actions clearly derive from such a

common nucleus of operative facts since they arise out of the same compensation

policies and practices of Park Avenue," and even involve the same weekly work

hours and wages in this case.

Even more compelling in this case, critical and material aspects of the FLSA

overtime claim are supplied by the NYLL wage notice requirement and are not

actually set forth in the FLSA itself. In this regard, for example, the regular rate

used to calculate FLSA overtime wages and the deadline for payment of FLSA

overtime wages each pay period, are taken under the FLSA from the agreement/contract of the parties and state law in the form of the NYLL wage notice and wage notice requirement under NYLL § 195(1) – NYLL 198(1-d) then provides a private right of action for violations of NYLL § 195. By way of reinforcement, the regular rate and overtime rate that must be set forth in the NYLL § 195(1) wage notice, must also comply with the FLSA – regular rate cannot be less than the applicable minimum wage rate and the overtime rate in the notice cannot be less than 1.5 times the regular rate as set forth in the FLSA at 29 USC § 207. Similarly, the wage statement required by NYLL § 195(3), must reflect the hours worked and wages earned within the meaning of the FLSA and NYLL and the wage statement requirements are critical and integral to FLSA compliance. Very significantly, the federal and state laws are so intertwined that a showing that Plaintiff was paid correctly under the FLSA and NYLL would also be a defense to liability as to the wage notice and wage statement claims as set forth in NYLL §§ 198(b) and (d).

Notably, and once again, the district court did not dispute the obvious fact that the subject state wage notice and wage statement claims share a common nucleus of operative facts with the federal overtime claims and that these claims are sufficiently related within the meaning of the supplemental jurisdiction statute at 28 USC § 1367. The district court also does not dispute that it can award

damages to Plaintiff on the wage notice and wage statement claims and do so very easily based on the penalties set forth in the statute and the clear nature of the statutory violations which are also admitted by default.

Finally, none of the exceptions under 28 U.S.C § 1367 apply – notably, the dismissal of the wage notice and wage statement claims was not based on any exception in 28 U.S.C § 1367 – almost every federal judge in New York has exercised subject matter jurisdiction over these wage notice and wage statement claims, including Magistrate-Judge Levy in prior cases, and who issued the R&R in this case. Once again, in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020), the Second Circuit stated in relevant part as follows:

> "Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplementaljurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

In addition, this type of erroneous ruling by the district court as to subject matter jurisdiction over the wage notice and wage statement claims, creates additional unnecessary complication, delays and expense by in essence, requiring two separate lawsuits for claims that are related, and that share a common nucleus of operative facts and are inextricable intertwined. Notably, because the wage notice and wage statement claims are so heavily dependent on the overtime claims

21

– especially where the outcome of the overtime claims can be a defense to the wage notice and wage statement claims, it is not really practical or feasible to litigate these claims separately and in different courts. In any event, the district court's ruling would also subject defendants to a second lawsuit in state court under fee-shifting provisions that require defendants to pay the prevailing plaintiff legal fees and costs in addition to having to paying defense counsels as well.

**(B) THE SECOND CIRCUIT HAS EXERCISED SUBJECT MATTER JURISDICTION OVER THE VERY TYPE OF NYLL WAGE NOTICE AND WAGE STATEMENT CLAIMS AS IN THIS CASE**

Not surprisingly, therefore, the Second Circuit recently exercised subject matter jurisdiction over the same wage notice and wage statement claims and affirmed judgment on these claims. *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021)("For example, the purported hiring notice Azoulay cites lacks required information about the employer (such as contact information and the corporate or business name), as well as required information about tip credit or tip policy. Similarly, Azoulay relies on purported wage notices that lack required information regarding all hours worked and wages paid. See Appellee Br. at 16-21.").

22

**(C)THE OVERWHELMING MAJORITY OF NEW YORK'S FEDERAL JUDGES CONTINUE TO EXERCISE SUBJECT MATTER JURISDICTION OVER NYLL WAGE NOTICE AND WAGE STATEMENT CLAIMS, BUT THE SPLIT CREATED BY A SMALL MINORITY HAS RESULTED IN MUCH UNCERTAINTY AND CHAOS**

Since the amendments to NYLL in 2009 to 2011, that strengthened the protections of NYLL § 195 and amended NYLL § 198 at (1-b) and (1-d) to create claims for violations of NYLL §§ 195(1) and 195(3) respectively, approximately over 10,000 FLSA cases have been filed in New York's federal courts, and each of these FLSA cases almost certainly included NYLL §§ 195/198 wage notice and wage statement claims because they are tied to unpaid wages under the FLSA and NYLL.

In fact, almost every federal judge in New York has exercised supplemental jurisdiction over wage notice and wage statement claims under NYLL § 195/198 – including Magistrate-Judge Levy in prior cases and who issued the R&R in this case. See i.e. *Brummell v. K1 HVAC Inc.,* No. 19 CV 5488(FB)(RML), 2021 WL 3888138, at 6 (E.D.N.Y. Aug. 13, 2021), report and recommendation adopted, No. 1:19-CV-5488-FB-RML, 2021 WL 3884194 (E.D.N.Y. Aug. 31, 2021); *Marquez v. Indian Taj, Inc.,* No. 20 CV 5855 (DG)(RML), 2022 WL 4485948, at 6 (E.D.N.Y. Aug. 5, 2022), report and recommendation adopted, No. 20CV05855DGRML, 2022 WL 4485185 (E.D.N.Y. Sept. 27, 2022); *Cortez v. 8612 Best Coffee Shop Inc.,* No. 13CV3095RRMRML, 2015 WL 10709830, at 8

(E.D.N.Y. Aug. 14, 2015), report and recommendation adopted, No. 13CV3095RRMRML, 2016 WL 1559148 (E.D.N.Y. Apr. 18, 2016); *Hernandez v. Quality Blacktop Servs., Inc.,* No. 18CV4862RJDRML, 2021 WL 1207316, at 9 (E.D.N.Y. Mar. 30, 2021).

Its appears that Magistrate-Judge Levy has exercised subject matter jurisdiction over these wage statement and wage notice claims in the past, but changed course very recently based on a few cases starting with Judge Chen's decision in *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC), 2022 WL 954740, (E.D.N.Y. Mar. 30, 2022); and more recently Judge Cogan's decision in *Deng v. Frequency Elecs., Inc.*, 2022 WL 16923999, at 3 (E.D.N.Y. Nov. 14, 2022), which followed *Sevilla*. Moreover, as in *Sevilla*, the court in *Deng*, did not address the supplemental jurisdiction issue, and most of the other arguments herein.

> **(D) THE DISTRICT COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION OVER THE STATE OVERTIME AND MINIMUM WAGE CLAIMS, FURTHER CONFIRMS THAT IT WAS REQUIRED TO ALSO EXERCISE SUBJECT MATTER JURISDICTION OVER THE STATE WAGE NOTICE AND WAGE STATEMENT CLAIMS**

In dismissing the wage notice and wage statement claims, the district court appears to reason that because Article III requirements cannot be waived, each claim state claim must independently satisfy the requirements of Article III. In

other words, the district court appears to hold that each claim must independently satisfy the requirements of *original* federal jurisdiction. However, the state overtime and minimum wage claims over which the district court exercised subject matter jurisdiction do not independently satisfy the requirements of original subject matter jurisdiction under Article III because even if these claims satisfy the injury requirement, they undisputedly do not satisfy the other requirements of Article III such as federal question, diversity of citizenship, etc. For example, even if injury exists as to the state overtime claims, Plaintiff will not be able to file such state overtime claims by themselves in federal court because the injury as to these claims do not arise under federal law as required by Article III.

How then was the district court able to exercise subject matter jurisdiction over the state overtime and minimum wage claims, without violating the rule that Article III requirements cannot be waived? The answer is simple and settled even if not addressed by the district court – through the supplemental jurisdiction statute which codified U.S. Supreme Court Constitutional jurisprudence on this issues, because the state overtime and minimum wage claims, like the state wage notice and wage statement claims, were part of the *same* Constitutional and Article III case as the federal claim because of sufficient relatedness, and as such, satisfying the Article III requirements as to the federal overtime claim, also satisfies all of the Article III requirements as to the related state claims – they all formed *one* and the

*same* constitutional case for purposes of Article III which is the whole rationale for the supplemental jurisdiction statute and the related U.S. Supreme Court jurisprudence. As such, the district court had subject matter jurisdiction over the NYLL wage notice and wage statement claims.

### (E) THE CASES RELIED UPON BY THE DISTRICT COURT ARE DISTINGUISHABLE AND NOT INCOSISTENT WITH PLAINTIFF'S POSITION – THEY DO NOT INVOLVE OR ADDRESS SUPPLEMENT JURISDICTION, ESPECIALLY IN THE CONTEXT OF THIS CASE

As far as we can ascertain and discern, the lower court did not cite any case addressing the situation like we have here and that supports its ruling, that where the requirements for supplemental jurisdiction are otherwise met, there must also be a showing that state law claims satisfy the requirements of Article III independent of the anchor federal claim – requirements such as federal question/injury, etc.

If the district court is correct, then the U.S. Supreme Court has declared the supplemental jurisdictional statute to be unconstitutional, but it obviously has not done so. In this regard, it appears that none of these cases relied upon by the district court even mention or discuss the statute and the issues in those cases did not deal with the statute – the U.S. Supreme Court would not invalidate such an important statute that is at the backbone of our judicial system, without saying so

and without even mentioning the statute. Moreover, such an invalidation would

have certainly made big news known to all concerned by now.

The district court relied primarily on *TransUnion LLC v. Ramirez*, 141 S. Ct.

2190 (2021), and stated in relevant part as follows (*Guthrie*, 2023 WL 2206568, at

3):

> Magistrate Judge Levy recommended denying damages for Plaintiff's
> wage notice and wage statement claims for lack of Article III
> standing, quoting the 2021 Supreme Court case, *TransUnion LLC v.
> Ramirez*, 141 S. Ct. 2190 (2021), which held "that a technical
> violation triggering a statutory damage award only confers Article III
> standing if the plaintiff demonstrates an actual and concrete injury
> resulting from that violation." (ECF No. 12, R & R at pp. 13-14.)

Significantly, Plaintiff's supplemental jurisdiction argument is not

inconsistent with *TransUnion*. In this regard, *TransUnion* held that where Article

III injury is lacking, original federal subject matter jurisdiction will also be lacking,

and dismissal of the subject federal claim would be required, along with any state

claims that were anchored by the dismissed federal claim – *TransUnion* did not

involve a situation, like here, where the court undisputedly had subject matter

jurisdiction over a federal claim that in turn provided the basis or anchor for

supplemental jurisdiction over sufficiently related and intertwined state claims. By

contrast, there is no dispute in this action that Article III standing exist and that the

Court has original subject matter jurisdiction as to the federal overtime claims

under the FLSA. Similarly in *Maddox v. Bank of New York Mellon Tr. Co., N.A.,*

19 F.4th 58, 60 (2d Cir. 2021), there was no federal claim over which the Court had original subject matter jurisdiction which would then have been the basis or anchor for supplemental jurisdiction over the state law claims.

In terms of *Citizens for Resp. & Ethics in Washington v. Trump*, 971 F.3d 102 (2d Cir. 2020) – the district court appear to have cited to a dissenting opinion of a denial of a petition for en banc hearing. In terms of *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019), cited by the district court, it appears that the federal claim in *Melito* was dismissed, leaving no basis for the exercise of supplemental jurisdiction which needs an anchor in the form of a claim with original federal subject matter jurisdiction. Unlike *Melito*, there is no dispute here that the district court had original federal subject matter jurisdiction over the federal FLSA overtime claims which shared a common nucleus of operative facts with the subject NYLL wage notice and wage statement claims.

Aside from *TransUnion*, the district court seem to have relied most heavily on *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017), but such reliance is grossly misplaced. In this regard, the district court in *Town of Chester* exercised subject matter jurisdiction over the federal claims and supplemental jurisdiction over the state claims – very similar to the situation here. The part of that case that reached the supreme court is not relevant here – the part where someone other than the Plaintiff tried to intervene and was found to lack standing

28

but was later granted permission to intervene in the name of the Plaintiff, after the case returned to the district court.

By contrast and way of reinforcement, a year or so after *Town of Chester* was decided, the U.S. Supreme Court in *Artis v. D.C.*, 199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018), specifically addressed the supplemental jurisdiction statute and explained in relevant part as follows:

> The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." § 1367(a). Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode.

In other words, a more recent U.S. Supreme Court case addressing the supplemental jurisdiction statute, reaffirmed decades of settled and consistent law that where a district court has original federal subject matter jurisdiction over a claim, it also has subject matter jurisdiction over state law claims arising from a common nucleus of operative facts or the same episode – even where the state law claims would not independently satisfy the requirements of Article III – state law claims by definition are not federal claims and do not arise under federal law. Logically, if state claims independently satisfied the requirements of Article III such as Article III injury, there would be no need for supplemental jurisdiction and the supplemental jurisdiction statute and the Supreme Court's supplemental

29

jurisdiction jurisprudence would be dead. As such, the district court's ruling is contrary to settled law and logic and must be reversed.

### 2. IN ANY EVENT, CONCRETE AND SUFFICIENT INJURY/HARM EXISTS FOR STANDING PURPOSES

As we have explained above, Plaintiff need not show Article III injury as to his wage notice and wage statement claims separate and independent from the related FLSA overtime claims, because these wage notice and wage statement claims are considered part of the same Constitutional case as the federal overtime claims over which the Court undisputedly has federal Article III subject matter jurisdiction. Moreover, an Article III injury/case must arise under federal law in this case where the other Article III grounds for subject matter jurisdiction do not apply (diversity of citizenship, federal party, etc) - stated another way, federal question is a requirement for Article III subject matter jurisdiction. As such, if the district court is correct that related state claims must be analyzed independent of the federal claims for purposes of subject matter jurisdiction, then the court will still lack subject matter jurisdiction over these claims and the other state claims (overtime and minimum wage claims) over which the district court did exercise subject matter jurisdiction, given that Article III injury/case must arise under federal law, or viewed from another angle, these *state* claims obviously do not arise under federal law and do not present a federal question. As such, the only way the district court was able to exercise subject matter jurisdiction over the state

30

overtime claims was not because Article III injury or a federal question exists as to these claims but because these claims are sufficiently related to the federal overtime claims under the supplemental jurisdiction statute which codified U.S. Supreme Court Constitutional jurisprudence on the issue.

In any event, controlling for the fact that injury as to the state law claims cannot and does not arise under federal law and that these claims do not arise under federal law – they are state law claims for a reason, we will also demonstrate that concrete injury otherwise exists under Article III of the U.S. Constitution as to the wage notice and wage statement claims, separate from and independent of the federal overtime claims.

The district court recognized that other courts have disagreed with it and found the existence of concrete injury within the lingo of Article III and stated in relevant part as follows (*Guthrie*, 2023 WL 2206568, at 5):

> To be sure, courts in the Second Circuit have reached different conclusions when weighing the sufficiency of a plaintiff's allegations to show Article III standing to pursue NYLL wage notice and wage statement claims in federal court. Some cases have found that the denial of the right to information[1] about one's wages tied to an entitlement to one's unpaid wages is sufficient to satisfy Article III.

More recently, in *Bueno v. Buzinover,* No. 22CIV2216PAEKHP, 2023 WL 2387113, at 3 (S.D.N.Y. Mar. 7, 2023, Judge Engelmayer), the court found the allegations of failure to provide the NYLL § 195 notice and statements sufficient to establish injury and stated in relevant part as follows:

"[T]he WTPA was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at 8 (S.D.N.Y. Mar. 20, 2020). The written notices mandated under the WTPA serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." *Id.* at 9. Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims. Consistent with this, multiple courts in this District have exercised jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice. *See, e.g.*, *id.*; *Burns v. Scott*, No. 20 Civ. 10518 (JGK), 2022 WL 10118491, at 5, 9 (S.D.N.Y. Oct. 17, 2022); *Inga v. Nesama Food Corp.*, No. 20 Civ. 0909 (ALC) (SLC), 2021 WL 3624666, at 6, 10 (S.D.N.Y. July 30, 2021), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021); *Hong v. JP White Plains, Inc.*, No. 19 Civ. 5018 (NSR), 2021 WL 1226566, at 8 (S.D.N.Y. Mar. 31, 2021). This Court has exercised jurisdiction over wage statement and wage notice claims in two recent trials involving such claims. *See Sanchez v. E.I.G. Auto Salvage, Inc.*, No. 21 Civ. 8266 (PAE) (SN); *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532 (PAE) (RWL).

The reasoning above in powerfully consistent with standing jurisprudence that was summarized by the U.S. Supreme Court in *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2204–05 (2021) in relevant part as follows:

In determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be "instructive." 578 U. S., at 341, 136 S.Ct. 1540. Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to

sue over the defendant's violation of that statutory prohibition or obligation. See *id.,* at 340–341, 136 S.Ct. 1540. In that way, Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.,* at 341, 136 S.Ct. 1540 (alterations and internal quotation marks omitted); see *Lujan*, 504 U.S. at 562–563, 578, 112 S.Ct. 2130; cf., *e.g., Allen v. Wright*, 468 U.S. 737, 757, n. 22, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (discriminatory treatment). But even though "Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (CA6 2018) (Sutton, J.) (citing *Spokeo*, 578 U. S., at 341, 136 S.Ct. 1540).

Here, the lower court did not "afford due respect to [NY Legislature's] decision" to create the wage notice and wage statement claims and it is obvious that failure to provide the notices/statements is far more than "remotely harmful." In fact, this is a classic case where the legislature "elevate[d] harms that exist in the real world … to actionable legal status." For many years, New York Labor Law contained wage notice and wage statement requirements in statute (i.e., NYLL § 195) and recordkeeping of similar type information by regulation (i.e., 12 NYCRR § 142-2.6). Through a series of amendments to NYLL from 2009 to 2011, the NY Legislature strengthened these requirements. The amendments also allowed employees, through NYLL § 198(1-b) and (1-d), to bring the very claims at issue on this appeal because of the serious, actual and concrete harm caused by widespread violation of these important wage notice and wage statement requirements. Because the actual and concrete harms can be difficult to quantify

and measure, the wage notice and wage statement claims allow recovery of a daily penalty that is capped at $5,000 for the wage notice claim and capped at another $5,000 for the wage statement claim.

## (A) FINANCIAL HARM – UNPAID WAGES

As to the wage notice and wage statement claims, NYLL § 198(1-b) and NYLL § 198(1-d) respectively, condition these claims on the existence of financial harm in the form of unpaid wages and states in relevant part as follows:

> In any action or administrative proceeding to recover damages for violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article

Here, it is undisputed that unpaid wages constitute a sufficient Article III injury, and it is also undisputed that Plaintiff suffered unpaid wages and was even awarded a judgment for such unpaid wages under the FLSA and NYLL by the district court in this case. Here, such unpaid wages are an essential part of the wage notice and wage statement claims – claims that will fail if "the employer made complete and timely payment of all wages due." NYLL § 198(1-b) and (1-d). As such, upon careful examination, it cannot be genuinely or reasonably disputed that concrete injury in fact as to the wage notice and wage statement claims, exists in this case in the form of unpaid wages under the FLSA and NYLL.

## (B) FINANCIAL HARM - LOSS OF MONETARY EMPLOYMENT BENEFIT

It is not and cannot be genuinely disputed that providing an employee with the wage notice and wage statements is a significant financial benefit like other employment benefits in exchange for the employee's labor and that deprivation of this benefit results in significant, serious and concrete financial injury.

When an employment relationship is formed, an employee agrees to give his labor and in return receives a variety of compensation and monetary benefits. Some of those benefits are required by law and others are the product of agreement between employer and employee. For example, an employer may agree to provide an employee with a variety of benefits such as meals in the company's cafeteria, lodging the company's apartment building, access to the company's gym, etc. Similarly, the laws of the State may require an employer to provide an employee with certain minimum wages, overtime wages, health insurance, and as relevant here, certain fiduciary benefits involving the withholding and payments on behalf of employees, keeping records and providing the employee with related statements. All of these benefits have a significant financial value, the deprivation of which results in actual, and concrete financial harm and concrete injury under Article III.

In the context of the subject claims here, the employer was required to record the work hours of the employee, use those hours and the rate(s) set forth in the wage notice, to calculate wages/overtime wages under the FLSA and pay the

employee. The employer must then calculate and withhold taxes to be paid over to the government on the employee's behalf. The employer also withholds and pays for health insurance, disability and a variety of other benefits and obligations. The employer then provides the employee with a wage statement reflecting all of these very important financial transactions. To do so, employers generally have payroll and accounting departments and also utilize billion-dollar third party providers such as ADP and Paychex to assist. The costs of these services that result in the wage statements are obviously a significant financial benefit to the employee that can easily run into thousands of dollars per employee. If the employee was an independent contractor who had to perform or pay for these functions himself, he would have to spend a lot of his own time and hire accountants – time is money, and accounting, tax and other professionals are not cheap and cost lots of money. Importantly, whether done by the employer or employee, the type of financial accounting and bookkeeping and the resulting wage/accounting statements are a necessary part of life for legal, tax, employment, and financial reasons – especially with the tax, terrorism and money laundering statutes and regulations that dominate the financial lives of hundreds of millions of innocent Americans – Plaintiff's counsel herein had to engage the court and assemble large amounts of documentation just so that his client in another case could deposit a settlement check approved by the court under *Cheeks* and have his account reopened after it

was closed simply because the amount of the check was deemed *unusual* by a large bank which then needed the type of wage statement in this case and even more. (See i.e., *Martinez v. 22-04 Collier Ave LLC*, EDNY Case No. 22-cv-570(RER), Docket No. 18-21). It is therefore simply and grossly erroneous to equate providing wage statements that is an accounting by a fiduciary (employer) involving significant sums of money/wages under penalty of law, to a technical violation involving notice/report from a credit bureau as in *TransUnion*, which many people likely never read or have issues with.

## (C)INFORMATIONAL HARM AND OTHER FORMS OF CONCRETE INJURY

In addition to the monetary harms set forth above, there is informational and other injury here that is concrete within the meaning of Article III. In this regard, the U.S. Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213–14, 210 L. Ed. 2d 568 (2021), stated in relevant part as follows:

> For its part, the United States as *amicus curiae*, but not the plaintiffs, separately asserts that the plaintiffs suffered a concrete "informational injury" under several of this Court's precedents. See *Federal Election Comm'n v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998); *Public Citizen v. Department of Justice*, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989). We disagree. The plaintiffs did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*.
> Therefore, *Akins* and *Public Citizen* do not control here.

Here, Plaintiff has alleged that he did not "receive [] required information," and as such, Plaintiff also has informational standing in this case. In fact, the type

37

of payroll information at issue here, is probably the most important type of information in the context of informational harm for standing purposes - more concrete harm than the harm in cases where the U.S. Supreme Court found informational standing – cases like *Akins* and *Public Citizen* reaffirmed in *TransUnion*. It is reasonable to conclude that if members of the U.S. Supreme Court do not receive their paystubs/wage statements each pay period they will view it as a big deal. A paystub is critical for an employee – whether a judge, or a janitor, or someone like Plaintiff, to determine whether they are being robbed by the employer – whether the hours and wages are correct, whether the deductions for taxes are being made and in the correct amount, whether other deductions for health insurance, life insurance, retirement funds, and a variety of important matters are being made and in the correct amounts, and whether the employer need to step in and make these payments at the risk of losing health insurance because of non-payment or falling into serious legal jeopardy because of non-payment of taxes, etc. In the absence of correct wage statements, an employee's ability to act and act promptly to remedy violations and recover money – such as before statute of limitations expire, or before a company becomes inactive, merges out of existence or changes its name, is seriously impeded. Significantly, the employer also acts as a fiduciary in many ways as the very important obligations on behalf of the employee – and the notices and information are essential to ensure that these

38

obligations are carried out in a regular and timely manner. For example, if the employer does not withhold and pay taxes on behalf of the employee or if the employer does not withhold and pay retirement contributions, etc., the employee would not know of such delinquency and the need to make the required payments, etc., without receiving wage statements and accurate wage statements at that, in addition to the other needs for such accurate wage statements such as accurate wages, hours and employment information.

In addition, wage statements are used and needed for a variety of important life events such as applying for public benefits, applying for bank loans and credit cards, applying for other employment, and even tax preparation and other tax matters. Pay stubs and wage statements are also very important evidence in a variety of matters in and out of court that center around an employee's employment, wages, wage deductions etc.

Also, the absence of accurate wage statements and wage notices makes it considerably more time-consuming and expensive to evaluate, file and litigate wage and employment claims – including this case. For example, NYLL § 195 requires the correct legal name and address of the employer to appear on the wage notice and pay stubs/wage statements.

Injury under Article III is context specific, and as the U.S. Supreme Court recognized long ago in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945), in

allowing the recovery of liquidated damages under the FLSA, failure to comply

with wage laws creates a variety of harms in addition to the underlying unpaid

wages – harms which by statute come with a penalty or liquidate damages to

compensate for harms which are difficult to measure. Similarly, the

penalties/liquidated damages provided in NYLL §§ 198(1-b) and (1-d) for

violation of the wage notice and wage statement requirements of NYLL §§ 195(1)

and 195(3), were intended to address a variety of actual and concrete but difficult

to measure harms/injuries as addressed above.

### 3. THE DISTRICT COURT RAISED THE ISSUE OF SUBJECT MATTER JURISDICTION SUA SPONTE WITHOUT PROVIDING NOTICE AND AN OPPORTUNITY TO BE HEARD

In overruling the objections to the R&R, the district court concluded that

Plaintiff's alternative arguments that concrete and actual injury exists as to the

wage statement and wage notice claims, were not raised before the R&R was

issued or were not supported by factual allegations in the complaint/case. In this

regard, the district court is wrong on a number of levels. At the outset, the Second

Circuit in *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018),

reversed the district court on the subject matter jurisdiction issue and stated in

relevant part as follows:

> We conclude that by failing to exercise supplemental jurisdiction
> under the circumstances of this case, the District Court committed
> three interrelated errors. First, it acted *sua sponte* without affording

the parties notice and an opportunity to be heard. Second, it impugned, on the record, plaintiffs' counsel's motives without affording any notice about this assessment of counsel's conduct or any opportunity to explain himself. Finally, the District Court's analysis of the factors considered under 28 U.S.C. § 1367(c) for determining whether to exercise supplemental jurisdiction was inadequate.

Here, with respect to declining subject matter jurisdiction over the NYLL wage notice and wage statement claims, the Magistrate-Judge in the R&R "acted *sua sponte* without affording the parties notice and an opportunity to be heard." *Catzin,* 899 F.3d at 82. Although courts can and often raise the issue of subject matter jurisdiction sua sponte, they would provide the parties with notice and opportunity to be heard such as through the issuance of an order to show cause or request for briefing on the issue. The failure here to provide notice and opportunity to be heard is especially erroneous and wrong as a matter of law, because Magistrate-Judge Levy who issued the R&R, like most other judges in New York's federal courts, had previously exercised subject matter jurisdiction over the same wage statement and wage notice claims. See i.e., *Brummell v. K1 HVAC Inc.,* No. 19 CV 5488(FB)(RML), 2021 WL 3888138, at 6 (E.D.N.Y. Aug. 13, 2021), report and recommendation adopted, No. 1:19-CV-5488-FB-RML, 2021 WL 3884194 (E.D.N.Y. Aug. 31, 2021); *Marquez v. Indian Taj, Inc.,* No. 20 CV 5855 (DG)(RML), 2022 WL 4485948, at 6 (E.D.N.Y. Aug. 5, 2022), report and recommendation adopted, No. 20CV05855DGRML, 2022 WL 4485185 (E.D.N.Y. Sept. 27, 2022).

Moreover, as set forth in the complaint, the basis for subject matter jurisdiction over the wage notice and wage statement claims is supplemental jurisdiction under the supplemental jurisdictional statute at 28 USC § 1367 and not original jurisdiction under Article III – state claims by definition are not federal claims.

Next, the allegations and evidence in the case, when viewed in the proper context and when the law is properly applied, is more than sufficient to establish concrete injury as to the wage notice and wage statement claims. At the outset, the district court itself conceded that other courts have found the allegations in the case to be sufficient – that the very failure to provide the required wage notice and wage statements is itself sufficient to establish concrete injury – as further explained by the district court in *Bueno* as excerpted above at pages 31-32.

Second, the statute itself at NYLL § 198(1-b) and (1-d) ties liability under the wage notice and wage statement claims to unpaid wages – under the FSLA and NYLL, and the district court itself found the existence of unpaid wages under the FLSA and NYLL and even awarded Plaintiff a judgement for such wages.

Third, it is not disputed, and can be reasonably inferred that it costs money to perform the necessary bookkeeping and accounting and provide Plaintiff with wage notice and statements, and as such, providing Plaintiff with this benefit as required by law has significant financial value and deprivation of this benefit/value

42

obviously constitutes financial and monetary harm that is more than sufficient to establish concrete injury for standing purposes.

Fourth, there is no dispute that Plaintiff alleged and did not receive the "information to which he was entitled" (*TransUnion*), when NYLL § 195 was violated – whether this deprivation is sufficient to establish concrete injury for standing purposes is a matter of legal interpretation and not lack of factual allegation, and based on *TransUnion* itself, Plaintiff is correct on this point as explained above.

Fifth, the fact that harms/injuries may be difficult to quantify does not mean such harms do not exist or are not concrete and sufficient within the meaning of Article III. Such harms, including "these possible injuries … the Court does not disagree with" as the district court here said (*Guthrie*, 2023 WL 2206568, at 4), can be reasonably inferred from the violation, especially in the context of a pre-answer motion for default judgment.

Finally, because subject matter jurisdiction cannot be waived, arguments concerning subject matter jurisdiction can be raised at any time. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ('Characterizing a rule as jurisdictional renders it unique in our adversarial system. Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy.'). Although the non-waiver rule is often

mentioned in situations involving arguments against a court's subject matter jurisdiction, it is equally applicable to arguments in favor of the court's subject matter jurisdiction. This is because subject matter jurisdiction goes to the power of the court to act and whether the court *does not have* such power is just as important as whether it *does have* such power. As such, and because the parties cannot take from a court subject matter jurisdiction it has or give to a court subject matter jurisdiction it does not have, arguments both in favor and against a court's subject matter jurisdiction can be raised at any time and are never waived.

Moreover, this issue as to subject matter jurisdiction over wage notice and wage statement claims, is beginning to create all kinds of problems for the district courts in the Second Circuit. Although the overwhelming majority of judges continue to exercise subject matter jurisdiction, it only takes a few judges to create a split, uncertainty and increasing chaos. For example, of the three judges that have cited this case as of the date of this brief, one judge agrees (Judge Cogan), one judge disagrees (Judge Engelmayer) and one judge declined to take a position (Magistrate-Judge Henry). Even judges who agree have to now raise and address the issue in every FLSA wage case filed that almost always contain wage notice and wage statement claims – as the wage notice and wage statement claims are tied to unpaid wages, and even if they spend the time in each case handling a motion to dismiss, they will likely have to deal with the issue again when the parties reach a

settlement inclusive of the FSLA claims and wage statement/wage notice claims that then must be approved on the merits as fair and reasonable under *Cheeks*.

Once again, it is worth repeating that although concrete injury exists as to the wage statement and wage notice claims, the basis for subject matter jurisdiction over these claims is the supplemental jurisdiction statute at 28 USC § 1367 which codified the U.S. Supreme Court's Constitutional jurisprudence on this issue and does not require a showing of Article III injury independent and separate from the federal overtime claims which undoubtedly satisfy all of the requirements of Article III and are sufficiently related to the wage notice and wage statement claims within the meaning of the supplemental jurisdiction statute.

## VI.    CONCLUSION

Based on the foregoing, it is therefore respectfully requested that this Honorable Court: 1) reverse the district court and hold that the district court had subject matter jurisdiction over the NYLL wage notice and wage statement claims and was required to exercise such jurisdiction to decide these claims; and 2) grant Plaintiff such other, different and further relief in his favor as the Court deems just and proper.

**Dated: Queens Village, New York
         May 3, 2023**

Respectfully submitted,

Abdul Hassan Law Group, PLLC

_Abdul Hassan_
Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000, Fax: 718-740-2000
Email: abdul@abdulhassan.com

**CERTIFICATION PURSUANT TO**
**Fed. R. App. P. 32(a)(7)(B) and (C)**

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 11,360 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: Queens Village, New York
        May 3, 2023

                                    *Abdul Hassan*