# Abdul Hassan Law Group, PLLC
## 215-28 Hillside Avenue
## Queens Village, New York, 11427
~~~~~

**Abdul K. Hassan, Esq.**                                                    Tel: 718-740-1000
Email: abdul@abdulhassan.com                                      Fax: 718-740-2000
*Employment and Labor Lawyer*                              Web: www.abdulhassan.com

**January 11, 2024**

**Via ECF**

Hon. Judge Steven J. Menashi
Hon. Judge Alison J. Nathan
Hon. Maria Araújo Kahn
U.S. Court of Appeals, Second Circuit
40 Foley Square
New York, NY 10007

<div align="center">

**Re: Guthrie v. Rainbow Fencing Inc**
**2d Cir. Case #: 23-350**
**Post Argument Clarification, etc.**

</div>

Dear Honorable Judge Menashi, Nathan and Kahn:

My firm represents Plaintiff-Appellant Robert Guthrie ("Plaintiff," "Appellant" or "Guthrie"), in the above-referenced appeal, and I respectfully write to clarify certain points made at the recent oral arguments on January 8, 2024. To the extent the Court's permission is required for consideration of this filing, such permission is respectfully and kindly requested.

**First**, for this Court to rule against Plaintiff and hold that the U.S. Constitution requires a separate showing (separate from the federal claims in the common nucleus) of federal Article III injury as to state claims that the supplemental jurisdiction statute (28 USC 1367) does not require, it would have to declare the supplemental jurisdiction statute to be unconstitutional – an extraordinary act for which there is no support in law. Since *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), more than 50 years ago, the Second Circuit and the U.S. Supreme Court have never required such a showing as far as we know from the research – the district court could also not find any supplement jurisdiction precedent from this Court and the U.S. Supreme Court that required such a showing.

Similarly, for this court to rule against Plaintiff it will have to overrule Circuit precedents and U.S. Supreme Court precedents holding that once the requirements of the supplemental jurisdiction statute are satisfied, the district court "shall" exercise supplemental subject matter

1

jurisdiction over state law claims. (Pl. Br. ECF No. 35. 13-29). *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) ('Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."'). *Artis v. D.C.*, 199 L. Ed. 2d 473, 138 S. Ct. 594, 597–98 (2018).

However, a three-judge panel of this Court cannot overrule a prior three judge panel of this Court, and even an en banc panel of this Court cannot overrule the U.S. Supreme Court. As such, this Honorable Court should follow the supplemental jurisdiction statute as it is written, as well as the supplemental jurisdiction precedents of this Court and U.S. Supreme Court (Pl. Br. ECF No. 35. 13-29), until and unless the U.S. Supreme Court issues a supplemental jurisdiction ruling to the contrary – the same way this Court did in *Alonso* when it exercised supplemental subject matter jurisdiction and affirmed rulings on the merits of these very type of state wage notice and wage statement claims.

In *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (Mem)–654 (2d Cir. 2021), the Second Circuit exercised supplemental jurisdiction and stated in relevant part as follows:

> The plaintiffs alleged, as relevant here, that during their employment at Wow Car Wash, Azoulay failed to provide: (1) spread-of-hours wages as required by 12 NYCRR § 142-24; (2) notice of wage information at the time of hiring, as required by NYLL § 195(1)(a) ("hiring notice"); and (3) proper notice with each payment of plaintiffs' wages, as required by NYLL § 195(1)(3) ("wage notice"). The District Court granted plaintiffs summary judgment on these claims, awarding statutory damages, liquidated damages, and pre-judgment interest, totaling $42,277.88,
>
> …Azoulay challenges the notice claims by generally arguing that the plaintiffs' allegations are false and that he did comply with the statutes. However, the documents Azoulay provided plaintiffs do not contain all the information required by NYLL § 195(1)(a) or (3).

As in *Alonso* which was affirmed by this Court, the district court here should have exercised supplemental subject matter jurisdiction and awarded Plaintiff a judgment for damages on his wage notice and wage statement claims.

**Second**, standing is not a separate requirement from subject matter jurisdiction – standing is a part of subject matter jurisdiction – if standing is lacking, then subject matter jurisdiction will be lacking. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) ("Some preliminaries: As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)."). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) ("where a complaint is dismissed for lack of Article III standing … Such a dismissal is one for lack of subject matter jurisdiction").

Therefore, because standing is a part of subject matter jurisdiction, when the supplemental jurisdiction statute and controlling precedents like *Shariar* and *Artis* state that a district court must and shall exercise supplemental subject matter jurisdiction over state claims where the requirements of the supplemental jurisdiction statue are met, those authorities are necessarily saying that the required standing exists as to the state law claims – no need to show federal Article III injury as to state law claims separate and apart from the federal claims in the common nucleus.

**Third**, the statement in *TransUnion* that there should be a showing of "standing for each claim," is also satisfied in the context of supplemental jurisdiction, even though the supplemental jurisdiction issue was not before the Court in *TransUnion*. In this regard, for more than 50 years, the U.S. Supreme Court and the Second Circuit have adhered to the holding and explanation in *Gibbs*, that federal and state claims sharing a common nucleus of operative facts are considered a single case or claim for purposes of Article III subject matter jurisdiction/standing – there is nothing in *TransUnion* that contradicts or even addresses this point. A claim/case can be defined differently for different purposes and the U.S. Supreme Court has the power to do so even if we disagree. Notably, the U.S. Supreme Court in *TransUnion* did not define the boundaries of a claim/case for standing purposes – because in that case, unlike here, standing as to the federal claim failed so there was no need to define the need for federal jurisdiction that did not exist in that case. Relatedly, there is nothing in *TransUnion* that says that the U.S. Supreme Court's formulation of case/claim in *Gibbs* for purposes of Article III subject matter jurisdiction/injury was wrong. The U.S. Supreme Court in not in the business of overruling seminal precedents like *Gibbs* and a long list of controlling precedents that followed without even mentioning or addressing the precedent and the subject issue – such as supplemental subject matter jurisdiction in this case.

**Fourth**, we also know that *TransUnion* did not require a separate showing of federal Article III injury as to state law claims, because it is not possible to establish Article III injury separate from a federal claim in the common nucleus as to state law claims where subject matter jurisdiction is based on federal question and not diversity of citizenship. In this regard, *TransUnion* itself explains that "under Article III, an injury in law is not an injury in fact" and it is even more true that injury in fact is not injury in law. In other words, *TransUnion* confirms that Article III injury consists of two parts – injury in law and injury in fact, and that injury in law means injury in ***federal law***. See *TransUnion* (explaining that for Article III standing to exists, there must be a showing of a plaintiff "suffering concrete harm because of the defendant's violation of ***federal law***." This is not surprising because Article III itself states that outside of diversity jurisdiction and some other grounds that do not apply here, a case/injury must be "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority…" By way of further example, If Plaintiff had filed his state overtime claims alone in federal court without an accompanying and sufficiently related federal claim from a common nucleus, his state case/claim would be dismissed for lack of Article III injury/subject matter jurisdiction because even though he can show injury in fact in the form of unpaid wages, he would not be able to show injury in law because the injury in that context arose under state law and not under federal law.

3

Therefore, a separate showing of Article III injury as to state law claims separate and apart from a related federal claim in the common nucleus is not and cannot be a requirement for supplemental jurisdiction as a matter of law, because such injury is not legally possible as to state claims outside of diversity jurisdiction which is not applicable here.

**Fifth**, it does not appear that the district court cited any supplemental jurisdiction case in support of its ruling – precisely because the controlling supplemental jurisdiction jurisprudence supports Plaintiff and not the district court.  As we explained in the briefing and above, *TransUnion* is not a supplemental jurisdiction case, and it did not address or overrule decades of U.S. Supreme Court and Second Circuit precedents that support Plaintiff. (Pl. Br. ECF No. 35 pg. 13-29). In fact, *TransUnion* strongly supports Plaintiff's position, for by example, explaining that standing/injury is not separate from and is actually part of subject matter jurisdiction, and that injury in law means injury in federal law, where, as here, Article III jurisdiction is based on federal question and not diversity of citizenship. Since it was issued, the *TransUnion* decision has been cited hundreds of times and it appears that it has never been cited in the supplemental jurisdiction context or to dismiss state claims for lack of supplemental subject matter jurisdiction, outside a small but problematic group of district court cases in this Circuit – the majority of judges in this Circuit do not follow the district court's position in this matter but the split is nonetheless significant and should be resolved by this Circuit in an expeditious manner.

**Sixth**, it is important to remember that the supplemental jurisdiction statute is not just the statute – it codified U.S. Supreme Court constitutional jurisprudence dealing with supplemental jurisdiction. See *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) ("Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading. 28 U.S.C. § 1367.")

In drafting complaints involving federal and state wage claims which obviously share a common nucleus of operative facts, the universal practice as can be gleaned from examination of complaints filed on ECF, is to set forth facts establishing Article III subject matter jurisdiction/standing/injury over the federal claims, but not as to the state claims because no matter how much injury in fact exists as to the state claims, there will not be Article III injury in law/federal law and thus no Article III injury as to the state law claims, outside of diversity jurisdiction and when viewed separate and apart from the federal claims. Nonetheless, as explained in the brief, there are direct allegations of financial injury and other financial and informational injury can be reasonably inferred from the complaint. As such, if this Court concludes that Plaintiff need not show injury under federal law in order to establish federal Article III standing, injury in fact is established by the complaint in many forms.

**First**, it is undisputed that the complaint directly alleges financial harm in the form of the failure to pay wages, and it is also undisputed that such financial harm together with the failure receive the required wage notice and wage statement are essential parts of the wage notice and wage statement claims. (Pl. Br. ECF No. 35, pg. 30-45). As such, injury in fact in the form of financial loss is direct and obvious in the complaint. The fact that Plaintiff recovered the lost wages in a judgment does not mean that standing was destroyed – it actually enforces it because the judgment confirms the injury in existence and amount as a matter of law. Moreover, although Plaintiff recovered the lost wages which were part of the subject claims, he did not recover the

penalties which were also part of the claim, because of an erroneous subject matter jurisdiction ruling. In any event and as often happens, a single injury can give rise to many claims and recovery on one claim does not destroy jurisdiction over the other claims arising from the same injury – to the extent there is overlapping recovery, there is an offset performed by the court – but this does not affect the Court's subject matter jurisdiction in any way. For example, termination of an employee in violation of contract can give rise to a breach of contract claims, and if the breach was unlawfully motivated by a protected characteristic such as race or gender, the same breach would also give rise to a termination claim under the Civil Rights Law that would also provide for additional recoveries. Similarly, a single failure to pay wages can give rise to a minimum wage claim, overtime claims, spread of hour claims, a wage notice claims and a wage statement claim – as in this case and the *Alonso* case decided by this Court.

**Second**, and very importantly, subject matter jurisdiction can be inferred from the allegations in the complaint. In this regard, the Second Circuit in *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736–38 (2d Cir. 2017), citing *Lujan*, stated in relevant part as follows:

> When the defendant asserts a "facial" challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and "are to 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " Carter, 822 F.3d at 58 (quoting Lujan, 504 U.S. at 561, 112 S.Ct. 2130)

*TransUnion* also cited *Lujan* to highlight the different levels of proof at the different stages of litigation. Here as laid out in the brief, numerous Article III injuries in fact can be reasonably inferred from the failure to provide the required notice and statements as set forth in the complaint. (Pl. Br. ECF No. 35, pg. 30-40). This is because the type of violation here is simply much more profound and impactful than the technical violation in *TransUnion* – almost every adult in the United States including judges, attorneys, etc. received a pay stubs each pay period understand the importance of the information provided and the many harms that result from not receiving such wage notices and statements. (Pl. Br. ECF No. 35, pg. 30-40). In this regard, Magistrate-Judge Levy who wrote the RR here, has now recently changed course in cases like *Lin v. Bund Dumpling House Inc.,* 2023 WL 7688886, at 8 (E.D.N.Y. Sept. 26, 2023), in which he stated as follows:

> The wage statement and notice violations alleged here are of a different class of harm from those alleged in TransUnion and Maddox. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." Bueno, 2023 WL 2387113, at 3… Indeed, if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable.

*Lin* was also a default judgment case like this one, and the allegations in *Lin* did not go beyond in essence alleging the failure to provide the required notice and statement but MJ Levy reasonably inferred injury for Article III purposes from the complaint. Similarly, Judge

5

Engelmayer in *Bueno v. Buzinover,* 2023 WL 2387113, (S.D.N.Y. Mar. 7, 2023), also found Article III standing based on reasonable inferences from the allegations in the complaint which were like the subject allegations in this case. Most judges in this Circuit continue to exercise subject matter of the wage notice and wage statement claims without issuing written opinions. In fact, the Honorable Judge Nathan has exercised supplemental subject matter jurisdiction in many ways in many cases involving wage notice and wage state claims over many years in her prior role as a distinguished district judge in this Circuit.

Finally, is the law of unintended consequences. A ruling against Plaintiff such as invaliding the supplemental jurisdiction statute would not only be extraordinary and legally wrong but would unnecessarily harm the judiciary and the litigants who use the judicial system.

**First**, requiring plaintiffs to separately plead and prove (separate from the federal claim in the common nucleus) federal Article III injury as to wage notice and wage statement claims under state law, would lead to an avalanche of litigation on the standing issue – like we are seeing already, costing tens of thousands of dollars as to claims that have a maximum statutory cap of $5,000 each. In fact, because courts can and must raise the subject matter jurisdiction issue on their own, every judge will be required to force a motion and litigation on the issue in every one of these types of cases of which there are very many as you know from the ECF filings. Such increased motion practice and litigation will not only burden an already overburdened judicial system - especially since Covid, but it will also burden the Second Circuit because many of those jurisdictional rulings will be appealed.

**Second**, requiring two lawsuits in two different courts as to claims that should be litigated together will double the legal fees, judicial resources needed, etc. Indeed, because these claims are all based on fee-shifting statutes, plaintiffs attorneys like me will benefit from a likely doubling in case load and related fees, but I am against it because it is legally incorrect and is clearly not in the best interest of the parties and the judicial system – it is important that we take the time and effort to get this right – a divided circuit is in immediate need of guidance that is legally correct and wise.

Third, this Court will significantly destroy its res judicata jurisprudence with a ruling against Plaintiff. Both res judicata and supplemental jurisdiction cover cases that should be litigated and tried together and by holding that the wage statement and wage notice claims here should not be litigated together with the other wage claims will mean that almost any claim can be separated from one lawsuit and brought in another without being barred by res judicata – because the wage claims here have a high level of relatedness often not found in other sets of claims – if highly related claims must be separated, separation will apply equally more to less highly related claims.

Fourth, is the impact on settlements. We are already seeing many situations where settlement is failing because Defendants take the incorrect position that the wage statement and wage notice claims do not belong in federal court. Even when a settlement is reached, there are significant problems because of this issue. In this regard, settlements in these wage cases require court approval under *Cheeks* in which the court must evaluate the merits of the wage notice and wage statement claims and decide whether the amount of payment, in relation to the value of

6

these and other claims, is fair and reasonable on the merits. However, where a court lacks subject matter jurisdiction it cannot make decisions on the merits as to these claims. In fact, because lack of subject matter jurisdiction is never waived and can be raised even at late stages, a ruling against Plaintiff on this appeal can jeopardize many settlements already reached and approved by district courts in this Circuit and will affect many more yet to be approved. This effect will prolong litigation, increase judicial workload, and increase costs for all concerned – including the defendants who must also deal with fee-shifting.

Once again, this Honorable Court should follow its lead in *Alonso* where the Second Circuit exercised supplemental subject matter jurisdiction and affirmed rulings on the merits of these very type of state wage notice and wage statement claims – this Honorable Court should rule in favor of Plaintiff on this appeal and reverse the district court.

I thank the Court in advance for its time and consideration.

Respectfully submitted,

Abdul Hassan Law Group, PLLC

/s/ Abdul Hassan_____
Abdul K. Hassan, Esq.
*Counsel for Plaintiff-Appellant*