# 23-350

## United States Court of Appeals
## for the Second Circuit



ROBERT GUTHRIE,

*Plaintiff-Appellant,*

-against-

RAINBOW FENCING INC, AND LAWSON BURGE,

*Defendants-Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPELLANT'S PETITION FOR REHEARING
## OR REHEARING *EN BANC*

ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000
*legal@abdulhassan.com*

RAINBOW FENCING INC.
AND LAWSON BURGE
*Defendants-Respondents, Pro Se*
1217 E 84th St
Brooklyn, New York 11236

# TABLE OF CONTENTS

I. RULE 35 STATEMENT .......................................................................................... 1

II. ARGUMENT ...................................................................................................... 3

    1.    EN BANC REVIEW IS WARRANTED BECAUSE THE PANEL'S RULING IS OF EXCEPTIONAL IMPORTANCE AS IT IN ESSENCE DECLARED THE SJS TO BE UNCONSTITUTIONAL - AND BASED ON A LEGAL IMPOSSIBILITY – BY DEFINITION, A *STATE* LAW CLAIM BY "ITSELF' CANNOT MEET THE REQUIREMENTS OF *FEDERAL* QUESTION JURISDICITON/STANDING UNDER ARTICLE III – A RELATED FEDERAL CLAIM IS REQUIRED TO FORM ONE ARTICLE III CASE, AS PER *GIBBS* ............................................................................ 3

    2.    THE PANEL'S RULING IS IN DIRECT CONFLICT WITH THE U.S. SUPREME COURT'S BINDING PRECEDENTS IN *GIBBS*, *CITY OF CHICAGO, EXXON*, AND *ARTIS* ............................................................................................................ 7

    3.    EN BANC REHEARING IS WARRANTED BECAUSE THE PANEL'S PRECEDENT-SETTING OPINION IS IN CONFLICT WITH SECOND CIRCUIT PRECEDENT ............ 12

    4.    REHEARING BY THE PANEL IS ALSO WARRANTED AS TO OVERLOOKED AND MISCONSTRUED MATTERS ...................................................................... 13

III. CONCLUSION.................................................................................................. 14

i

# TABLE OF AUTHORITIES

## Cases

*Artis v. D.C.*,
  138 S. Ct. 594, 597–98 (2018) ................................................................ 2, 3, 12, 14

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47, 54–55 (2d Cir. 2016) ...................................................................... 5

*City of Chicago v. Int'l Coll. of Surgeons*,
  522 U.S. 156, 156–57 (1997) ...................................................................... passim

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332, 351-52 (2006) ...................................................................... 11, 12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) ................................................................................ 2, 3, 9, 14

*Flast v. Cohen*,
  392 U.S. 83, 98–99 (1968) ................................................................................... 5

*Hohn v. United States,*
  524 U.S. 236, 252–53, (1998) ............................................................................ 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 560 (1992) ..................................................................................... 5

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234, 245 (2d Cir. 2011) ........................................................ 2, 3, 13, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413, 430–31 (2021) ...................................................................... 5, 6, 9, 10

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715, 725 (1966) ............................................................................. passim

*Whitmore v. Arkansas*,
  495 U.S. 149,155 (1990) ........................................................................... 11, 12

## Statutes

28 U.S.C § 1367(a) .............................................................................................. 8

# I. RULE 35 STATEMENT

Petitioner-Appellant Robert Guthrie ("Petitioner," "Plaintiff" or "Guthrie"),

respectfully seeks rehearing en banc, and rehearing by a three-judge panel,

following the panel's ("Panel")[1] opinion, dated August 30, 2024, (Exhibit 1,

annexed), affirming the decision of the district court to dismiss the NYLL wage

notice and wage state claims for lack of *federal* Article III subject matter

jurisdiction/standing (Matsumoto, DJ), and ruling as follows (Panel Opinion - Ex.

1, pg 5)(Plaintiff's Brief - ECF No. 35 pg. 13-26):

> Guthrie's argument, in other words, is that if he can satisfy the
> requirements of the supplemental jurisdiction statute, he does not need
> to demonstrate Article III standing for his state-law claim.

> That is incorrect.

First, Rehearing en banc is warranted because as per FRAP 35(a)(2), the

Panel's ruling is sufficiently and exceptionally important because it "would

effectively read the supplemental jurisdiction statute out of the books," as the U.S.

Supreme Court ("USSC") observed in *City of Chicago*, 522 U.S. 156, 167 (1997).

As per FRAP 35(a)(1), the Panel's precedential ruling that the requirements of the

supplemental jurisdiction statute at 28 U.S.C. 1367 ("SJS"), are not enough to

establish supplemental subject matter jurisdiction under Article III in this action, is

in direct conflict with supplemental jurisdiction precedents of the Second Circuit

---

[1] The three judge panel (Honorable Judges Menashi, Nathan and Kahn), is respectfully referred to herein as the "Panel" to distinguish from the full court and prior three judge panels of this Court.

and the USSC. For example, the USSC in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 156–57 (1997), contradicted the Panel as follows:

> Having thus established federal jurisdiction, the relevant inquiry respecting the accompanying state claims is whether they fall within a district court's supplemental jurisdiction, and that inquiry turns on whether they satisfy § 1367(a)'s requirements.

See also, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same), *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (same), *Artis v. D.C.*, 138 S. Ct. 594, 597–98 (2018) (same). Similarly, the Panel's holding above is in conflict with the Second Circuit's binding precedent in *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011):

> Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998) (emphasis supplied).

The Panel became the first appellate panel in history to not follow the USSC decisions in *Gibbs*, etc., and to in effect declare the SJS to be unconstitutional - holding that the requirements of the SJS that are undisputedly satisfied in this case, are insufficient to meet Article III Constitutional standards, under *Gibbs*, etc. En banc review is needed to maintain the uniformity with this Court's decision and conformity with the U.S. Supreme Court's precedents.

In addition, it is also respectfully requested that the Honorable Panel grant rehearing and correct certain material arguments, facts and law that were

overlooked and misconstrued/misapprehended. First, the Panel did not address the argument that where the basis for invoking Article III is federal question (as opposed to diversity, etc.), Article III jurisdiction/standing/injury-in-fact must necessarily arise under federal law – and it would therefore be impossible as the Panel requires for a state claim by "itself" to satisfy the "elements of the Article III inquiry," such as federal question jurisdiction/standing/injury-in-fact. (ECF No. 35 pg. 13-26)(Ex. 1 pg. 6).

Second, the Panel overlooked and did not address the USSC and Second Circuit binding precedents such as *Gibbs*, *Exxon*, *City of Chicago*, *Artis, Shariar*, holding, contrary to the Panel's holding, that the requirements of the SJS are enough for supplemental Article III jurisdiction/standing. (ECF No. 35 pg. 13-26).

Third, the Panel misconstrued the SJS when it held that the SJS merely sets forth statutory standards and not Constitutional standards. The SJS actually codified Constitutional standards from USSC precedents like *Gibbs*. (ECF No. 35 pg. 13-26); See *City of Chicago*, 522 U.S. 156, 173 (1997).

## II. ARGUMENT

1. **EN BANC REVIEW IS WARRANTED BECAUSE THE PANEL'S RULING IS OF EXCEPTIONAL IMPORTANCE AS IT IN ESSENCE DECLARED THE SJS TO BE UNCONSTITUTIONAL - AND BASED ON A LEGAL IMPOSSIBILITY – BY DEFINITION, A *STATE* LAW CLAIM BY "ITSELF' CANNOT MEET THE REQUIREMENTS OF *FEDERAL* QUESTION JURISDICITON/STANDING UNDER ARTICLE III – A**

3

**RELATED FEDERAL CLAIM IS REQUIRED TO FORM
ONE ARTICLE III CASE, AS PER *GIBBS***

Contrary to *Gibbs* and the SJS, the Panel erroneously held that that a *state*
law claim by "itself", must satisfy "those elements of the Article III inquiry" such
as *federal* question jurisdiction/standing, separate and independent of a sufficiently
related federal claim. (Ex. 1 pg. 6). This is a legal impossibility because, where, as
here, the Article III basis/ground for federal jurisdiction/standing is federal
question as opposed to diversity of citizenship, for example,  Article III
standing/injury-in-fact must necessarily arise under federal law - state law by
definition is not federal law and the requirements of Article III
jurisdiction/standing cannot be waived by the Court or the parties – but these can
be established through a related federal claim that together with the state claim
form one Article III case, as per *Gibbs*, etc. (ECF No. 35 pg. 13-26).

Significantly, in *City of Chicago*, 522 U.S. 156, 167, 1, the USSC stated in
relevant part as follows:

> ICS' proposed approach—that we first determine whether its state
> claims constitute "civil actions" within a district court's "original
> jurisdiction"—would effectively read the supplemental jurisdiction
> statute out of the books: The whole point of supplemental jurisdiction
> is to allow the district courts to exercise pendent jurisdiction over
> claims as to which original jurisdiction is lacking.

Similarly, the requirement of the Panel here that a state claim by "itself" be
within a district court's "original jurisdiction – by having to satisfy the "elements of

the Article III inquiry" by itself "would effectively read the supplemental

jurisdiction statute out of the books" (Ex. 1 pg. 6), as the USSC stated above, and

even more so here because the Panel explicitly stated that the requirements of the

SJS are not enough to meet the Constitution standard – the complete opposite of

what the USSC said above. An interpretation that would "read the supplemental

jurisdiction statute out of the books," warrants en banc review.

"Some of the complexities peculiar to standing problems result because

standing 'serves, on occasion, as a shorthand expression for all the various

elements of justiciability." *Flast v. Cohen*, 392 U.S. 83, 98–99 (1968). However,

just as standing is not the same as subject matter jurisdiction, standing is also not a

separate requirement from subject matter jurisdiction – standing is a part of subject

matter jurisdiction – if standing is lacking, then subject matter jurisdiction will be

lacking, and when the law states that Article III jurisdiction exists, that necessarily

means that Article III standing also exists. See *TransUnion LLC v. Ramirez*, 594

U.S. 413, 430–31 (2021) ("Some preliminaries: As the party invoking federal

jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)."). *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992) ("the core component of standing is an essential

and unchanging part of the case-or-controversy requirement of Article III.").

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) (a dismissal

for lack of Article III injury/standing is a dismissal for lack of subject matter jurisdiction).  In fact, FRCP 12(b)(1) specifically describes a motion for "lack of subject-matter jurisdiction." A federal question is simply an injury caused by a violation of federal law – the same injury required for Article III standing.

Standing is a branch of the subject matter jurisdiction tree and when the Article III basis for federal jurisdiction is federal question as here and in *Gibbs*, standing and injury-in-fact must arise under federal law, consistent with the federal question requirement of Article III. Indeed, in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), which was heavily relied upon by the Panel, the USSC explained that in performing the standing analysis 'we start with the text of the Constitution. Article III confines the federal judicial power to the resolution of "Cases" and "Controversies,' such as those arising under federal law. Here, diversity jurisdiction does not apply and the Article III ground for federal court jurisdiction over all of the federal and state claims is this case is federal question, as explained in *Gibbs* - like here, *Gibbs* also involved federal and state claims.

By way of example, if an employer fails to pay an employee overtime wages in violation of NY state law, the injury in the form of unpaid wages qualifies an injury-in-fact under state law but not under Article III of the federal Constitution because it did not arise under or derived from one of the grounds set forth in Article III such as federal question. This is precisely why we cannot file a state

claim by "itself" in federal court without a related federal claim that can together with the state claim form one Constitutional case and satisfy the requirements of Article III and the SJS, as explained in *Gibbs*. (ECF No. 35 pg. 13-26).

Like the state overtime claims in this case, the state wage notice and wage statement claims – that are the subject of this appeal, all possess injury-in-fact under state law but not under Article III because at the outset they cannot by themselves satisfy the federal question requirement of Article III, without reliance on the SJS and *Gibbs*, etc.

Contrary to the Panel, the SJS does not merely set forth statutory requirements (Ex. 1 pg. 5-6) - the SJS actually codified the Constitutional requirements for jurisdiction/standing as set forth by the USSC in *Gibbs*, etc. See *City of Chicago*, 522 U.S. 156, 173 (1997) ("The supplemental jurisdiction statute codifies these principles."). By way of reinforcement, a comparison of the requirements and exceptions in *Gibbs* and the SJS will further confirm this.

En Banc review should be granted.

## 2. THE PANEL'S RULING IS IN DIRECT CONFLICT WITH THE U.S. SUPREME COURT'S BINDING PRECEDENTS IN *GIBBS*, *CITY OF CHICAGO, EXXON*, AND *ARTIS*

En Banc review should be granted because the Panel's ruling is in direct conflict with binding USSC precedents and is based on a legal impossibility. In

1990, Congress codified the USSC's supplemental jurisdiction jurisprudence by

enacting the SJS at 28 U.S.C § 1367(a), which states in relevant part as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly
> provided otherwise by Federal statute, in any civil action of which
> the district courts have original jurisdiction, the district courts shall
> have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that
> they form part of the same case or controversy under Article III of
> the United States Constitution.

The Panel in effect declared the SJS to be unconstitutional (Ex. 1 pg. 5):

> Guthrie's argument, in other words, is that if he can satisfy the
> requirements of the supplemental jurisdiction statute, he does not need
> to demonstrate Article III standing for his state-law claim.

> That is incorrect.

The SJS is based on the USSC precedents such as *Gibbs*, at 383 U. S. 725,

which states in relevant part as follows:

> Pendent jurisdiction, in the sense of judicial power, exists whenever
> there is a claim "arising under [t]he Constitution, the Laws of the
> United States, and Treaties made, or which shall be made, under their
> Authority . . . ," U.S.Const., Art. III, § 2, and the relationship between
> that claim and the state claim permits the conclusion that the entire
> action before the court comprises but one constitutional "case."
> [Footnote 12] The federal claim must have substance sufficient to
> confer subject matter jurisdiction on the court. *Levering & Garriges
> Co. v. Morrin,* 289 U. S. 103. The state and federal claims must derive
> from a common nucleus of operative fact.

As far as we know, the Panel's ruling is the first time in history that an

appellate panel held that satisfying the requirements of the SJS – which codified

the Constitutional standards in *Gibbs*, etc., was insufficient to establish

supplemental jurisdiction over a *state* law claim.

In *City of Chicago,* 522 U.S. 156, 156–57, stated as follows:

> Having thus established federal jurisdiction, the relevant inquiry
> respecting the accompanying state claims is whether they fall within a
> district court's supplemental jurisdiction, and that inquiry turns on
> whether they satisfy § 1367(a)'s requirements.

In *Exxon,* 545 U.S. 546, 561 (2005), the USSC stated as follows:

> The indivisibility theory is easily dismissed, as it is inconsistent with
> the whole notion of supplemental jurisdiction. If a district court must
> have original jurisdiction over every claim in the complaint in order to
> have "original jurisdiction" over a "civil action," then in Gibbs there
> was no civil action of which the district court could assume original
> jurisdiction under § 1331, and so no basis for exercising supplemental
> jurisdiction over any of the claims.

Similarly, the theory of the Panel in requiring even a state claim by "itself"

to satisfy the "elements of the Article III inquiry" such as federal question

jurisdiction/standing/injury-in-fact, "is inconsistent with the whole notion of

supplemental jurisdiction," and in conflict with the binding USSC precedents.

(ECF No. 35 pg. 13-26). Borrowing from the USSC in *Exxon*, if the Panel is

correct, then *Gibbs* was wrongly decided but the Panel cannot overrule the USSC.

The USSC cases such as *Gibbs*, *City of Chicago*, and *Exxon* which support

Plaintiff's position in this case are not inconsistent with and can be easily

distinguished from the cases relied upon by the Panel. The Panel most heavily on

*TransUnion*. However, *TransUnion* is not a supplemental jurisdiction case and did

9

not even mention or address the SJS or any supplemental jurisdiction precedents.

In *Hohn v. United States,* 524 U.S. 236, 252–53, (1998), the USSC stated in

relevant part as follows:

> This is not to say opinions passing on jurisdictional issues *sub silentio*
> may be said to have overruled an opinion addressing the issue
> directly. Our decisions remain binding precedent until we see fit to
> reconsider them, regardless of whether subsequent cases have raised
> doubts about their continuing vitality." (internal citation omitted)).
> United States v. More, 3 Cranch 159, 172 (1805).

As such, as explained by the USSC in the above excerpt, the panel was

required to continue following USSC precedents like *Gibbs*, etc. until and unless

they are specifically overruled by the SC (not in silence or by assumption or

perception) – the Panel does not dispute that it was required to find supplemental

jurisdiction in this action under *Gibbs*, etc.

Moreover, *TransUnion* is not inconsistent with *Gibbs*, because unlike *Gibbs*,

*TransUnion* did not involve supplemental jurisdiction over a state claim based on a

related federal claim. *TransUnion* also reminded us to start the standing analysis

with the case and controversy requirement in Article III which requires a federal

question/injury in this case involving state law claims – such is legally impossible

unless the state claim and the related federal claim are viewed as one Constitution

case as explained in *Gibbs* – not separately as required by the Panel.

Given that *TransUnion* did not even deal with or mention supplemental

jurisdiction, the panel invoked two supplemental jurisdiction cases from the USSC

10

- *Whitmore v. Arkansas*, 495 U.S. 149,155 (1990) and *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006). (Ex. 1 pg. 6). Once again, however, these cases cannot be said to overrule *Gibbs,* etc. and are fully consistent with *Gibbs*, the SJS and Plaintiff's arguments here. Notably, *Whitmore* and *Daimler* both dealt with the issue of supplemental jurisdiction over federal claims. By contrast, USSC's decision in *Gibbs*, did not involve supplemental jurisdiction over federal claims, and by it plain language found supplemental jurisdiction as to "state law" claims under federal question jurisdiction/standing - the same can be said for the SJS which is based on *Gibbs,* etc. and even contains specific *state law* references and exceptions. Consistent with *Gibbs* and the SJS, the USSC in *Daimler* discussed and reaffirmed *Gibbs* but declined to extend *Gibbs* to cover the federal claims in that case, and all of the statements in that case were in the context of *federal* claims as to which it was not impossible to establish federal question – the opposite is true for the state claims here and in *Gibbs,* etc.

Although the USSC does not need any special reason to decline to extend its precedents, there is a very reasonable basis – similar to some of the reasons behind the diversity jurisdiction provision in Article III that allows federal courts to hear state cases – to protect and preserve the federal/state system of governments where state law claims can be vindicated together with federal claims in federal court rather than risk those state claims being lost, abandoned or produce inconsistent

outcomes across the many states that make up the Union. In any event, like here,

*Gibbs* involved state claims which were not at issue in *Daimler* and *Whitmore*.

Notably, the USSC in *Daimler*, 547 U.S. 332, 351, reaffirmed the holding in

*Gibbs* and stated as follows:

> *Gibbs* held that federal-question jurisdiction over a claim may
> authorize a federal court to exercise jurisdiction over state-law claims
> that may be viewed as part of the same case because they "derive
> from a common nucleus of operative fact" as the federal claim. 383
> U.S., at 725, 86 S.Ct. 1130.

Importantly, relatively recently, and several years after *Daimler* and

*Whitmore* – the USSC reaffirmed the SJS and the holding in *Gibbs*, and stated in

relevant part as follows in *Artis,*138 S. Ct. 594, 597–98 (2018):

> The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables
> federal district courts to entertain claims not otherwise within their
> adjudicatory authority when those claims "are so related to claims ...
> within [federal-court competence] that they form part of the same case
> or controversy." § 1367(a). Included within
> this supplemental jurisdiction are state claims brought along with
> federal claims arising from the same episode.

Once again, it appears that the Panel did not cite even a single case declining

supplemental jurisdiction over state law claim like here and in *Gibbs*, where the

requirements of the SJS were met – because the Panel's ruling is contrary to

numerous USSC and Second Circuit precedents as explained herein.

### 3. EN BANC REHEARING IS WARRANTED BECAUSE THE PANEL'S PRECEDENT-SETTING OPINION IS IN CONFLICT WITH SECOND CIRCUIT PRECEDENT

Rehearing en banc is warranted because as per FRAP 35(a)(1), the Panel's precedential ruling that the requirements of the SJS are not enough to confer subject matter jurisdiction under Article III in this action, is in direct conflict with conflict with the Second Circuit's supplemental jurisdiction ruling in *Shahriar*, 659 F.3d 234, 245 (2d Cir. 2011):

> ('Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998) (emphasis supplied)').

This Court has also necessarily exercised supplemental jurisdiction over hundreds or thousands of state law claims that by themselves could not satisfy the requirements of Article III – such as federal question jurisdiction/standing, in deciding appeals involving state and federal claims that are sufficiently related under *Gibbs* – especially in the employment law context like here and in *Shariar*.

## 4. REHEARING BY THE PANEL IS ALSO WARRANTED AS TO OVERLOOKED AND MISCONSTRUED MATTERS

Rehearing by the Honorable Panel is also warranted as to several overlooked and misconstrued arguments, facts and law. First, the Panel did not address the argument that where Article III is invoked on the basis of federal question (as opposed to diversity, etc), Article III jurisdiction/standing/injury-in-fact must arise under federal law – and it would therefore be impossible as the Panel requires for a

state claim by "itself" to satisfy the requirements of Article III, such as federal question jurisdiction/standing/injury-in fact. (ECF No. 35 pg. 13-26).

Second, panel overlooked and did not address the USSC and Second Circuit precedents such as *Gibbs, Exxon, City of Chicago, Artis, Shariar*, holding, contrary to the Panel's holding, that the requirements of the SJS are enough for supplemental Article III jurisdiction. Relatedly, we alert the Panel to the fact that the supplemental jurisdiction cases it relied upon did not involve state law claims like here and in *Gibbs*. These USSC precedents not addressed by the Panel, require a reversal of the Panel's ruling. (ECF No. 35 pg. 13-26).

Third, the Panel misconstrued the SJS when it held that the SJS merely sets forth statutory standards and not Constitutional standards. The SJS actually codified Constitutional standards from USSC precedents like *Gibbs*. See *City of Chicago*, 522 U.S. 156, 173 (1997) ("The supplemental jurisdiction statute codifies these principles."). (ECF No. 35 pg. 13-26).

Upon reconsideration, this Honorable Court should reverse and remand.

### III. CONCLUSION

Based on the foregoing, Plaintiff-Appellant kindly requests that this Honorable Court grant this petition and the relief requested in his briefs, together with such other, further and different relief, in Plaintiff's favor, as the Court deems just and proper.

**Dated: Queens Village, New York**
      **September 13, 2024**

Respectfully submitted,

_Abdul Hassan_

Abdul Karim Hassan, Esq.
215-28 Hillside Avenue
Queens Village, New York 11427
Tel: 718-740-1000 - Fax: 718-740-2000
abdul@abdulhassan.com

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing Petition complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the Petition contains 3,528 words of text and 15 pages.

The Petition complies with the typeface requirements of Fed. R. App. P.32 (a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this Petition was prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, Size 14.

Dated: September 13, 2024

*Abdul Hassan*

Abdul K. Hassan

23-350
*Guthrie v. Rainbow Fencing Inc.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————————

AUGUST TERM 2023
No. 23-350

**ROBERT GUTHRIE,**
*Plaintiff-Appellant,*

v.

**RAINBOW FENCING INC., LAWSON BURGE,**
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Eastern District of New York

———————————

ARGUED: JANUARY 8, 2024
DECIDED: AUGUST 30, 2024

———————————

Before:      MENASHI, NATHAN, and KAHN, *Circuit Judges.*

Robert Guthrie filed this action against his former employer, Rainbow Fencing Inc., seeking unpaid wages as well as statutory damages for the failure to provide the wage notices and wage statements that New York law requires. The district court entered a

default judgment with respect to the unpaid wages but determined that Guthrie lacked standing to bring a claim for statutory damages because he had not alleged an injury-in-fact. We agree with the district court that a plaintiff lacks standing to pursue statutory damages for a technical violation—such as a failure to provide statutorily required notices—unless the plaintiff has plausibly alleged that the violation led to an injury-in-fact. Because Guthrie did not provide such a plausible allegation, we affirm the judgment of the district court.

———————

Abdul K. Hassan, Abdul Hassan Law Group, PLLC, Queens Village, New York, *for Plaintiff-Appellant.*

No appearance *for Defendants-Appellees*.

———————

Menashi, *Circuit Judge*:

Plaintiff-Appellant Robert Guthrie sued his former employer, Rainbow Fencing Inc. ("RFI"), for unpaid wages as well as for statutory damages arising from its failure to provide the wage notices and wage statements that New York law requires. *See* N.Y. Lab. L. § 195. RFI defaulted, and the district court entered a default judgment for Guthrie except with respect to his claim for statutory damages. The district court concluded that Guthrie lacked standing to pursue that claim because he failed to allege that the failure to provide the notices and statements caused him to sustain an injury-in-fact sufficient to meet the case-or-controversy requirement of Article III.

2

On appeal, Guthrie argues that (1) he did not need to meet the requirements of Article III standing to pursue his claim for statutory damages because the district court could exercise supplemental jurisdiction over that claim, and (2) he met the injury-in-fact requirement regardless. We agree with the district court that Guthrie cannot rely on supplemental jurisdiction in the absence of Article III standing. We further agree that a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under New York Labor Law § 195. Because Guthrie did not do so, we affirm the judgment of the district court.

## BACKGROUND

### I

RFI, a business based in Brooklyn with about twenty-two employees, provides fencing services and repairs. RFI employed Guthrie as a welder from 2014 to 2021. During that time, Guthrie earned between $12.50 and $17.50 per hour and worked between 44.5 and 54.5 hours per week. Guthrie alleged that "[a]t all times relevant herein, [he] was not paid any wages for his overtime hours … except that about 1-2 times each month, [he] was paid for about 8 overtime hours … at his straight regular hourly rate instead of at 1.5 times his regular hourly rate." App'x 8. Guthrie sued RFI in the Eastern District of New York to recover the unpaid wages under the federal Fair Labor Standards Act. *See* 29 U.S.C. § 207(a)(1) (requiring an employer to pay an employee 150 percent of the employee's hourly rate for time worked in excess of forty hours in a week). Guthrie also alleged that he never received the wage notices and wage statements that the New York Labor Law required RFI to provide.

3

Section 195 of the Labor Law—which was adopted as part of New York's Wage Theft Prevention Act, 2010 N.Y. Sess. Laws 1446-58 ("WTPA")—requires an employer to provide an employee, at the time of hiring, with a notice (1) describing the employee's rate of pay for regular and for overtime hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information. N.Y. Lab. L. § 195(1)(a). In addition, each time wages are paid, the employer must furnish a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances. *Id.* § 195(3). The Labor Law provides for statutory damages of up to $10,000 for the failure to provide the required wage notices and wage statements. *Id.* § 198(1)(b), (d).

RFI—and Lawson Burge, the CEO of RFI—failed to answer or otherwise to respond to Guthrie's complaint. Guthrie moved for a default judgment. A magistrate judge recommended that a default judgment be entered against RFI and that Guthrie be awarded a total of $91,243 in damages—a figure that included $3,200 in unpaid minimum wages, $42,421.50 in unpaid overtime wages, and $45,621.50 in liquidated damages—but that Guthrie's claim for statutory damages relating to the notices and statements be dismissed for lack of standing. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832 (E.D.N.Y. Dec. 13, 2022). The district court adopted the report and recommendation of the magistrate judge. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023). Guthrie timely appealed the judgment dismissing his claim for statutory damages.

## DISCUSSION

Guthrie raises two arguments on appeal. First, he argues that he did not need to satisfy the requirements of Article III standing with respect to his state-law claim for statutory damages because the district court could exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367. Second, he argues that he satisfied the injury-in-fact requirement of Article III regardless.

## I

Guthrie argues that he did not need to demonstrate Article III standing for his state-law claim because the district court may exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367. "[T]he relevant inquiry is not whether the wage notice and wage statement claims, independent of the federal overtime claims, satisfy the requirements of Article III," he suggests, but "whether the wage notice and wage statement claims 'are so related to the [FLSA] claims' that they form part of the same case as the FLSA claims over which the court undisputedly has federal subject matter jurisdiction." Appellant's Br. 17 (quoting 28 U.S.C. § 1367(a)). If the claims are so related, according to Guthrie, "then the Article III injury/subject matter jurisdiction over the FLSA overtime claims extends to the wage notice and wage statement claims under state law." *Id.* Guthrie's argument, in other words, is that if he can satisfy the requirements of the supplemental jurisdiction statute, he does not need to demonstrate Article III standing for his state-law claim.

That is incorrect. Guthrie misses the distinction between the jurisdiction that Congress has conferred on the federal courts by

statute, on the one hand, and the case-or-controversy requirement of Article III, on the other. "Subject-matter jurisdiction," however, "is an Art[icle] III *as well as* a statutory requirement." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (emphasis added). Federal courts "have only the power that is authorized by Article III of the Constitution *and* the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (emphasis added). Accordingly, "[o]ur jurisdiction is limited by both statute—we have only the jurisdiction granted to us by Congress—and by Article III of the United States Constitution, which provides that we may hear only Cases or Controversies." *In re Auction Houses Antitrust Litig.*, 42 F. App'x 511, 515 (2d Cir. 2002) (internal quotation marks, alteration, and citation omitted).

In addition to falling within the statutory authorization that the supplemental jurisdiction statute provides, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). The Supreme Court has said so directly: While the Court has recognized that "federal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case," it has "never" applied that "rationale … to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing, that 'serve to identify those disputes which are appropriately resolved through the judicial process.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006) (alteration omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149,

6

155 (1990)). It has never done so because its "standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press." *Id.* at 352.

We agree with the district court that the supplemental jurisdiction statute does not excuse Guthrie from demonstrating that he has standing to maintain his state-law claim for statutory damages.

## II

Guthrie argues in the alternative that he has standing because his complaint adequately alleged an injury-in-fact. This argument implicates a disagreement among the district courts because, as the district court observed in this case, "courts in the Second Circuit have reached different conclusions when weighing the sufficiency of a plaintiff's allegations to show Article III standing to pursue [New York Labor Law] wage notice and wage statement claims in federal court." *Guthrie*, 2023 WL 2206568, at *5. In our view, the Supreme Court clarified the appropriate standard in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). In light of that decision, we agree with the district court that a plaintiff cannot rely on "technical violations" of the Labor Law but must allege "actual injuries suffered as a result of the alleged … wage notice and wage statement violations." *Guthrie*, 2023 WL 2206568, at *6. Because Guthrie failed to allege an actual injury, his claim for statutory damages was properly dismissed.

## A

In *TransUnion*, the plaintiff filed a class action complaint against TransUnion LLC, a credit reporting agency, seeking statutory and punitive damages pursuant to the Fair Credit Reporting Act

7

("FCRA"). TransUnion had created a product called "OFAC Name Screen Alert," which aimed to identify consumers whom the Office of Foreign Assets Control deemed to be security risks, but the product "generated many false positives." 594 U.S. at 419-20. As a result, credit reports identified "[t]housands of law-abiding Americans" as potential "terrorists, drug traffickers, or serious criminals." *Id.* at 420.

One such person, Sergio Ramirez, sought to address the problem by requesting his credit file and other information that the FCRA obligated TransUnion to provide. TransUnion mailed Ramirez his credit file and the statutorily required summary of rights, and it disclosed the OFAC alert in Ramirez's file in a second mailing sent the following day. *Id.* Ramirez alleged in his lawsuit that TransUnion not only had "failed to follow reasonable procedures to ensure the accuracy of information in his credit file," but it also "failed to provide him with *all* the information in his credit file"—because it omitted the alert in the first mailing—and "violated its obligation to provide him with a summary of his rights 'with each written disclosure'" as the FCRA required. *Id.* at 421 (quoting 15 U.S.C. § 1681g(c)(2)). "The jury awarded each class member $984.22 in statutory damages and $6,353.08 in punitive damages for a total award of more than $60 million." *Id.* at 421-22.

The Supreme Court reversed the judgment because many of the class members lacked standing to sue TransUnion. The Court again "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Instead, "Article III standing requires a concrete

injury even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 578 U.S. at 341). Although "Congress may enact legal prohibitions and obligations" and "may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations," it remains the case that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. Thus, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426-27.

The Court applied this principle of "[n]o concrete harm, no standing" to Ramirez's class action. *Id.* at 442. It determined that the "1,853 class members whose credit reports were provided to third-party businesses suffered a concrete harm" and therefore had standing to sue TransUnion for failing to follow reasonable procedures. *Id.* But "[t]he 6,332 class members whose credit reports were not provided to third-party businesses did not suffer a concrete harm and thus do not have standing as to the reasonable-procedures claim." *Id.* As for the claim that TransUnion did not comply with the statutory requirements for providing disclosures to consumers, the plaintiffs had offered "no evidence that, other than Ramirez, a single other class member so much as *opened* the dual mailings, nor that they were confused, distressed, or relied on the information in any way." *Id.* at 440 (internal quotation marks omitted). Accordingly, "none of the 8,185 class members other than the named plaintiff Ramirez suffered a concrete harm" from the noncompliant disclosures that would confer standing to pursue the claim. *Id.* at 442. "Without any

evidence of harm caused by the format of the mailings," statutorily noncompliant mailings "are bare procedural violations, divorced from any concrete harm," that do "not suffice for Article III standing." *Id.* at 440 (internal quotation marks and alteration omitted).

### B

After *TransUnion*, we explained that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself.*" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (emphasis added) (citing *TransUnion*, 594 U.S. at 424-30). Consistent with that principle, many district courts in this circuit have recognized that allegations amounting only to a technical violation of § 195 of the New York Labor Law—without a resulting concrete injury—fail to establish Article III standing to pursue a claim for damages based on the violation.[1]

---

[1] *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC* (*Freeland I*), 681 F. Supp. 3d 58, 78 (W.D.N.Y. 2023) ("Courts in this Circuit have … held that, without more, technical violations of NYLL § 195(3), such as a truncated employer name, a missing phone number, missing gross deductions, missing gross wages, and even failure to provide the notice at all fail to confer standing."); *see also Montiel v. Mi Esquina Deli Corp.*, No. 23-CV-7870, 2024 WL 3509302, at *3 (E.D.N.Y. July 23, 2024); *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353, 2024 WL 1632255, at *6 (E.D.N.Y. Apr. 15, 2024), *report and recommendation adopted* (E.D.N.Y. June 10, 2024); *Cao v. Wedding in Paris LLC*, No. 20-CV-2336, 2024 WL 1518847, at *23 (E.D.N.Y. Mar. 29, 2024); *Feng v. Kelai Corp.*, No. 18-CV-12329, 2024 WL 1348654, at *18 (S.D.N.Y. Mar. 29, 2024); *Bayne v. NAPW, Inc.*, No. 18-CV-3591, 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Yanes v. Juan & Jon. Inc.*, No. 19-CV-0201, 2024 WL 1072034, at *7 (E.D.N.Y. Mar. 11, 2024); *Jurado v. Bisbas Gourmet Deli Inc.*, No. 23-CV-5175, 2024 WL 694100, at *2 (E.D.N.Y. Feb. 20, 2024); *Gao v.*

Some plaintiffs—including Guthrie—have invoked the notion of "informational injury" in support of standing to maintain a § 195 claim. The Supreme Court "has recognized that the unlawful withholding of requested information" may, under some circumstances, "cause[] 'a sufficiently distinct injury to provide standing to sue.'" *TransUnion*, 594 U.S. at 454 (Thomas, J., dissenting) (quoting *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989)). In *TransUnion*, the United States as amicus curiae argued "that the plaintiffs suffered a concrete 'informational injury' under several of [the] Court's precedents" that was sufficient to establish standing. *Id.* at 441 (majority opinion). The Court rejected this argument and clarified that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Following that guidance, many district courts have applied the rule that an

---

*Savour Sichuan Inc.*, No. 19-CV-2515, 2024 WL 664718, at *26 (S.D.N.Y. Feb. 16, 2024); *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, at *4 (S.D.N.Y. Feb. 12, 2024); *Cui v. D Prime, Inc.*, No. 20-CV-3667, 2023 WL 8283717, at *1 (E.D.N.Y. Nov. 30, 2023); *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050, 2023 WL 8003303, at *4 (E.D.N.Y. Nov. 17, 2023); *Cartagena v. Sixth Ave. W. Assocs. LLC*, No. 23-CV-3611, 2023 WL 6318170, at *2 (S.D.N.Y. Sept. 28, 2023); *Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423, 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 13, 2023); *Echevarria v. ABC Corp.*, No. 21-CV-4959, 2023 WL 5880417, at *6 (E.D.N.Y. Sept. 11, 2023); *Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-802, 2023 WL 5574854, at *13 (S.D.N.Y. Aug. 29, 2023); *Munoz v. Grp. US Mgmt. LLC*, No. 22-CV-4038, 2023 WL 5390204, at *6-7 (S.D.N.Y. Aug. 22, 2023); *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 56 (S.D.N.Y. 2023); *Lucero v. Shaker Contractors Corp.*, No. 21-CV-8675, 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023).

"informational injury" without a concrete downstream injury-in-fact does not establish standing to maintain a claim under § 195.[2]

But other district courts have reached conclusions inconsistent with *TransUnion*. One district court has held that even though the complaint was "unspecific as to the downstream injuries that resulted from these alleged statutory violations, such allegations are not necessary to supply standing." *Bueno v. Buzinover*, No. 22-CV-2216, 2023 WL 2387113, at *2 (S.D.N.Y. Mar. 7, 2023). Another district court has held that even if plaintiffs "allege only the bare assertion that they never received their statutorily required wage statements and notices," there is standing if "the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings." *Bello v. Pro-Line Pumping Corp.*, No. 22-CV-4081, 2023 WL 8260830, at *9 (E.D.N.Y. June 20, 2023), *report and recommendation adopted* (E.D.N.Y. July 19, 2023).[3] These district courts "exercised

---

[2] *See Cartagena*, 2023 WL 6318170, at *2 ("In *TransUnion*, the Supreme Court made clear that plaintiffs asserting an informational injury must allege some 'downstream consequences from failing to receive the required information.' Therefore, to have standing to bring a wage notice or wage statement claim, the plaintiff must allege injury stemming from the statutory violation.") (citation omitted) (quoting *TransUnion*, 594 U.S. at 442); *see also Cuellar v. Kings Juice Bar Deli Inc.*, No. 23-CV-4293, 2024 WL 3063792, at *1 (E.D.N.Y. June 20, 2024); *Rivera v. PLS Check Cashers of N.Y., Inc.*, No. 22-CV-5642, 2024 WL 263218, at *8 (S.D.N.Y. Jan. 24, 2024); *Freeland I*, 681 F. Supp. 3d at 77-78; *Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 415-17(S.D.N.Y. 2023); *Quieju v. La Jugueria Inc.*, No. 23-CV-264, 2023 WL 3073518, at *1-2 (E.D.N.Y. Apr. 25, 2023); *Shi v. TL & CG Inc.*, No. 19-CV-08502, 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022).

[3] *See also Gunthorpes v. IM. Grp., LLC*, No. 21-CV-5140, 2024 WL 2031191, at *8 (E.D.N.Y. Apr. 11, 2024) ("[I]f an employer's failure to provide wage

jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice," *Bueno*, 2023 WL 2387113, at *3, on the theory that "the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves," *Bello*, 2023 WL 8260830, at *9 (citing *Bueno*, 2023 WL 2387113, at *3). We do not doubt that the state legislature had the purpose to empower employees. But if that legislative purpose were enough to establish an injury, it would amount to "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). The Supreme Court has "rejected" that proposition. *Id.*

Accordingly, we agree with those district courts that have held that a plaintiff must show some causal connection between the lack of

---

statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable."), *report and recommendation adopted*, No. 21-CV-5140, 2024 WL 2022688 (E.D.N.Y. May 7, 2024); *Lin v. Bund Dumpling House Inc.*, No. 22-CV-6989, 2023 WL 7688886, at *8 (E.D.N.Y. Sept. 26, 2023) (same), *report and recommendation adopted*, No. 22-CV-6989, 2024 WL 1259358 (E.D.N.Y. Mar. 25, 2024); *Aguilar v. Page X Corp.*, No. 20-CV-5527, 2023 WL 7687226, at *8 (E.D.N.Y. Aug. 28, 2023) (same), *report and recommendation adopted*, No. 20-CV-5527, 2023 WL 9104385 (E.D.N.Y. Oct. 5, 2023).

accurate notices and the downstream harm. The legislature may have intended to empower employees to advocate for themselves, but unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.[4] Because the elements of Article III standing "are not

---

[4] In a number of cases, district courts have concluded that plaintiffs adequately alleged that the lack of accurate notices caused a downstream harm. *See, e.g.*, *Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) ("Kaur plausibly alleges that her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages and she was thus harmed by being deprived of her income for longer than she would have been had she been able to timely raise her underpayment earlier. This financial harm is a tangible downstream consequence of the failure to receive required information.") (internal quotation marks, alterations, and citation omitted); *Santamaria v. Vee Techs., Inc.*, No. 22-CV-4472, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024) ("Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid. So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here. That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements."); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) ("Plaintiffs here actually received inaccurate wage notices, which did not include a tabulation of hours and overtime, and which thereby prevented them from knowing whether, and to what extent, they had been underpaid during the nine-month period. Without a record of hours worked, plaintiffs have further remained unable to determine whether the remedial payments

14

mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot "assume[] [t]his conclusion without analysis" or rely on "speculation and conjecture." *Quieju*, 2023 WL 3073518, at *2. Rather, the plaintiff-employee must support a plausible "theory as to *how* he was injured by [the] defendants' failure to provide the required documents." *Id.*[5]

At the same time, some district courts have imposed too high a burden on plaintiffs-employees in § 195 cases, suggesting that they must demonstrate that "their lack of notice resulted in an injury

---

issued by TransPerfect have adequately compensated them for their overtime hours. Accordingly, the injury suffered by plaintiffs is not merely hypothetical.").

[5] *See also Perez*, 2024 WL 1632255, at *5 ("Plaintiff did not allege facts linking any legally cognizable injury that he personally experienced to [his employer's] failure to provide wage statements and wage notices under the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. Plaintiff has offered no theory as to *how* he was injured by Defendants' failure to provide the required documents.") (citation omitted); *Shi v. TL & CG Inc.*, No. 19-CV-08502, 2023 WL 5827598, at *3 (S.D.N.Y. Sept. 8, 2023) ("[T]he consequences of Defendants' failure to provide proper wage notices are entirely speculative.").

15

greater than [their employers'] minimum wage, overtime, and spread-of-hours wage violations" because only such a greater injury would entail "consequences beyond this lawsuit." *Pastrana v. Mr. Taco LLC*, No. 18-CV-09374, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), *report and recommendation adopted*, No. 18-CV-9374, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). To reach that conclusion, these district courts have often invoked our court's holding, in the context of tester standing, that a plaintiff-tester who failed to receive statutorily required disclosures "must show that he has an 'interest in using the information beyond bringing his lawsuit.'" *Harty*, 28 F.4th at 444 (alterations omitted) (quoting *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).[6] In our view, an employee who has actually lost wages is not analogous to a plaintiff-tester. A "tester" who seeks to promote compliance with statutory disclosure requirements through lawsuits must show some concrete interest in each lawsuit to have standing. Otherwise, the courts would confer on such a plaintiff "a

---

[6] *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC (Freeland II)*, No. 22-CV-6415, 2024 WL 2702201, at *4 (W.D.N.Y. May 24, 2024) ("Although Plaintiff alleges that the inaccurate statements hampered his ability to enforce his legal rights, this harm does not show an interest in using the information 'beyond bringing [this] lawsuit.'"); *Barbosa v. Phoenix Sutton Str. Inc.*, No. 22-CV-0666, 2024 WL 1835320, at *3 (E.D.N.Y. Apr. 26, 2024) ("In other words, a plaintiff must show that he has an interest in using the information beyond bringing his lawsuit.") (quoting *Harty*, 28 F.4th at 444); *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. 2023) ("Although Plaintiffs specifically allege the inaccurate notices delayed Plaintiffs' ability to enforce their legal rights (and therein prevent or prosecute the alleged wage theft), these harms do not show an interest in using the information 'beyond bringing [this] lawsuit.'") (quoting *Harty*, 28 F.4th at 444).

16

freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). By contrast, a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract.

### C

Guthrie argues that he satisfied the injury-in-fact requirement of *TransUnion*. We disagree. Before the district court—and again before this court—Guthrie identified potential harms that *could* result from an employer's failure to provide wage notices and wage statements. The lack of such notices and statements might impair "an employee's ability to seek relief for violations they may not have information about," for example, or result in a "lack of proper documentation to apply for public benefits." *Guthrie*, 2023 WL 2206568, at *4. Guthrie explains that wage statements may be "critical" for employees to determine "whether they are being robbed by the employer," "whether the hours and wages are correct," "whether the deductions for taxes are being made and in the correct amount," and "whether other deductions for health insurance, life insurance, retirement funds, and a variety of important matters are being made and in the correct amounts." Appellant's Br. 38. In addition, employees may need wage statements to file their taxes or to apply for public benefits, bank loans, credit cards, and other employment. *See id.* at 39.

We recognize that the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee. But Guthrie has not plausibly alleged

that RFI's failure to provide the wage notices and wage statements in this case caused him to suffer any of those harms. Guthrie's complaint offered only the following allegations with respect to the wage notices and wage statements:

- "At all times relevant herein, neither Defendant provided Plaintiff with the notice(s) required by NYLL 195(1)." App'x 8 (¶ 21).

- "At all times relevant herein, neither Defendant provided Plaintiff with the statement(s) required by NYLL 195(3)." *Id.* (¶ 22).

- "At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b), as well as an injunction directing defendants to comply with NYLL 195(1)." *Id.* at 12 (¶ 50).

- "At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d), as well as an injunction directing Defendants to comply with NYLL 195(1)." *Id.* (¶ 51).

Like the putative class members in *TransUnion*, Guthrie failed to identify a concrete downstream harm he suffered as a result of the statutory violation.

In *Maddox v. Bank of New York Mellon Trust Company, N.A.*, we considered a New York statute that "creates a private right to collect an escalating cash penalty" if a mortgagee delays recording a mortgage satisfaction until "more than thirty days after the mortgage is paid off." 19 F.4th 58, 64 (2d Cir. 2021). On appeal, the plaintiffs identified several harms that could result from such a delay. The delayed recording "may create and sustain an actionable cloud on title to the property securing the discharged mortgage debt," "risks creating the false appearance that the borrower has not paid the underlying debt and is thus more indebted and less creditworthy," may "mak[e] it difficult [for the borrower] to obtain financing" while his credit is adversely affected, and could cause anxiety for the borrower. *Id.* at 64-65. But plaintiffs "must 'plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief.'" *Id.* at 65-66 (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)). And the plaintiffs in that case had either "not alleged that th[e] purported risk materialized" or provided allegations that were "implausible." *Id.*

So too here. Like the district court, we do "not disagree" that "possible injuries" could result from violations of § 195. *Guthrie*, 2023 WL 2206568, at *4. But Guthrie "fails to link the general harms an employee *might* experience to any harms that Mr. Guthrie *did*, in fact, experience." *Id.* Without plausible allegations that he suffered a concrete injury because of RFI's failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.

19

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.